Gene Robert TURNER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19669.

United States Court of Appeals, Sixth Circuit.

May 7, 1970.

Gary L. Gardner, Louisville, Ky., for appellant; Eubanks, Gardner & Schaefer, Louisville, Ky., on the brief.

George LeFevre, Asst. U. S. Atty., Nashville, Tenn., for appellee; Charles H. Anderson, U. S. Atty., Nashville, Tenn., on the brief.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

PHILLIPS, Chief Judge.

Gene Robert Turner was convicted by a jury on three counts of violating the Dyer Act, 18 U.S.C. §§ 2312 and 2313, and sentenced to serve five years on each of the three counts, the sentences to run concurrently. Turner appeals.

On April 23 and 24, 1968, a total of three calls were charged to Turner's telephone in Louisville, Kentucky. The number called in each instance was that of Roberts, Ivey and Vance Funeral Home in Clarksville, Tennessee. Mr. Hooker, one of the operators of the funeral home, testified that he monitored at least two calls[1] on these dates purporting to be from an Anthony Wallace, who identified himself as a soldier stationed at Fort Campbell, Kentucky, a short distance from Clarksville. Wallace said that he was being transferred to Vietnam and was interested in having the funeral home store his 1966 Cadillac until he returned. He made arrangements to visit the funeral home to discuss the matter further.

On April 26, 1968, a man identifying himself as Anthony Wallace and a second man who identified himself as Wallace's cousin, but who was identified subsequently by Mr. Hooker and another employee as Gene Robert Turner, arrived at the funeral home in the 1966 Cadillac.

This Cadillac was identified by the F.B. I. as one stolen in Louisville, Kentucky, on April 24, 1968.

Both men were dressed in army style fatigue uniforms with insignia on them similar to the type worn by the soldiers at nearby Fort Campbell. After Wallace and his "cousin" had discussed the problems about leaving the car with family or friends, Wallace offered to sell it to Mr. Roberts. Mr. Roberts decided that he did not want to purchase it at the price offered. Mr. Hooker was then offered an opportunity to buy the car. After an agreement had been reached between Wallace and Mr. Hooker regarding the car, it was decided that the transaction would be completed the next day as it was late in the afternoon and the bank was closed. The next day (April 27, 1968) Wallace returned alone to the funeral home to deliver the car. Mr. Hooker paid Wallace two thousand dollars for the automobile and Wallace executed a notarized bill of sale to Mr. Hooker for the stolen automobile.

On May 10, 1968, I. L. Gammons, Manager of Dixie Auto Parts and Sales in Clarksville, Tennessee, received a telephone call from a man identifying himself as Joseph Callan, a soldier stationed at Fort Campbell, who said he was interested in selling his 1965 Cadillac prior to being transferred to Vietnam. Subsequently a man identifying himself as Joseph Callan and a second man later identified as Gene Robert Turner arrived at the office of Dixie Auto Parts and Sales in a 1965 Cadillac subsequently found by the F.B.I. to have been stolen in Indianapolis, Indiana, on May 6, or 7, 1968. Both men were wearing army type fatigue uniforms and represented themselves to be soldiers stationed at Fort Campbell.

An agreement had been made for Mr. Gammons to purchase the automobile when it was discovered that "Joseph" on the Kentucky registration papers had in-

---

1. Mr. Hooker testified that the telephone calls were to Mr. Roberts but that due to the fact that Mr. Roberts was hard of hearing, Mr. Hooker made it a practice to monitor calls to Mr. Roberts for the purpose of avoiding mistakes. The age of Mr. Roberts at that time was 79.

correctly been spelled "Josep." Mr. Gammons with Callan and Turner proceeded to Hopkinsville, Kentucky, to have the registration changed. Upon their return to Clarksville the payment was made and Mr. Gammons assisted the men in cashing the check. Turner was identified as the defendant-appellant in this case by Mr. Gammons and another employee of Dixie Auto Parts and Sales.

■ The F.B.I. investigation revealed that both Cadillacs had been stolen and moved in interstate commerce prior to being sold in Clarksville. The investigation resulted in an arrest warrant being issued on July 8, 1968, charging Gene Robert Turner with a violation of the Dyer Act on three counts. The arrest warrant was executed on August 21, 1968, when F.B.I. agents appeared at Turner's Louisville home. No reason appears in the transcript for the delay between the issuance of the arrest warrant in Tennessee and its execution in Kentucky. Turner's retained counsel did not attack the delay as unreasonable either at trial or on this appeal. Under these circumstances and absent any showing of prejudice to Turner's rights, we hold that the delay was not so unreasonable as to require reversal as a matter of law.

Turner was informed of the nature of the charges against him and placed in custody. Over the objection of Turner, the room in which he was arrested was searched and a number of items seized. The significant items which were later admitted into evidence over Turner's objection were: (1) army type fatigue uniforms of the type worn by Turner and his companion on the visits to Mr. Hooker and Mr. Gammons in Clarksville; (2) telephone invoices listing certain long distance calls charged to Turner's telephone and showing that the charges were for calls from Turner's telephone to the number listed for the Roberts, Ivey and Vance Funeral Home in Clarksville on April 23 and 24, 1968; and (3) a rental receipt for a typewriter rented by or for Turner and later reported by Turner as having been stolen.

Evidence was adduced that Turner on two occasions had identified himself as the brother of Anthony Wallace in order to register Cadillac automobiles in the name of Wallace in Hardin County, Kentucky. The witness, the deputy court clerk of that county, testified that she became suspicious when Turner told her that he had never been in her office before. When she checked the records she discovered that four Cadillacs prior to that time had been registered in the name of Anthony Wallace. The deputy clerk stated that she had remembered Turner from a visit to her office two weeks earlier when she had assisted him in registering a Cadillac. Both of these visits were subsequent to the events charged in this case. On cross examination this witness testified that State charges were pending at that time against Turner for false registration of an automobile.

There was evidence that the papers used to secure the Kentucky registrations which later were used in selling the automobiles in Tennessee were not typed upon typewriters in the office of the county clerk. The testimony was that the registrations were forged.

■ Turner's defense consisted of an alibi. There was testimony which if believed would have placed Turner in Louisville at times which would have precluded his being in Clarksville on the dates charged. This defense was a question of fact and was resolved against Turner by the jury.

On appeal Turner raises three questions: (1) whether the Court erred in refusing to grant him a bill of particulars; (2) whether the case of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, is to be given retroactive application; and (3) whether the District Court erred in permitting the jury to hear testimony of illegal acts of Turner which occurred subsequent to the events charged and in failing to grant him a continuance to refute the charges.

## I.

The question of whether a Court should grant a defendant a bill of particulars is addressed to the sound discretion of the District Judge. Turner on this appeal alleges that he was the victim of illegal wiretapping by the United States. His motion for the bill of particulars, however, contained only the bare assertion of a wiretap and did not present averments of sufficient specificity to require the District Judge to grant the request as a matter of right. We find no abuse of discretion in the denial of the request for a bill of particulars. Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305; Cullen v. United States, 408 F.2d 1178 (8th Cir.).

## II.

The search in this case was permissible under the cases of United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 and Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, but would be impermissible under the case of Chimel v. California, supra, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. The latter decision limits searches incident to a lawful arrest to the area within the immediate control of the person arrested, and from which he could secure a weapon or destroy evidence. The instant case was tried in January 1969. The Chimel decision was announced in June 1969. The question is presented as to whether the Chimel case is to be applied retroactively. This question was left unanswered by the Supreme Court. Von Cleef v. New Jersey, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728, and Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732. The question has been answered in the negative by the Courts of Appeals for two circuits. United States v. Bennett, 415 F.2d 1113 (2d Cir.), Whiteley v. Meacham, 416 F.2d 36 (10th Cir.). In Colosimo v. Perini, 415 F.2d 804, this Court reserved a decision as to whether Chimel is to be given retrospective effect. For the reasons set forth in the opinion of Judge Friendly in United States v. Bennett, supra, we hold that Chimel v. California, supra, is not to be applied retroactively. Hence the search involved here was legal as incident to a lawful arrest under Rabinowitz and Harris, which correctly set forth the law to be applied in this case.

In any event it appears that the conviction should be affirmed under the decisions of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. Turner was identified positively by the two men to whom the automobiles were sold as well as by employees of the funeral home and Dixie Auto Parts & Sales. There is also other evidence in the record pointing to Turner's involvement in the acts charged. The evidence establishes conclusively that Turner was wearing army style fatigue uniforms on the occasions described above. The uniforms seized in Turner's room were not necessary to establish this fact. Neither were the telephone invoices which were seized in Turner's room necessary to support a conviction. The fact of the making of the long distance calls is well established in the record without reference to the seized invoices. Thus it appears that if the seized evidence had never been introduced there still would be sufficient evidence in the record to find Turner guilty beyond a reasonable doubt. Under Chapman and Harrington, the error, if any, was harmless.

## III.

Turner contends that the Court erred in admitting evidence concerning his registration of other Cadillac automobiles in Hardin County, Kentucky, subsequent to the events charged in this case, and in refusing to permit a continuance to refute the allegations. The mention of State charges pending against Turner resulted from cross examination by Turner's retained counsel. The evidence of his identifying himself as the brother of Anthony Wallace in registering other Cadillacs is admissible

in any event to show the modus operandi, guilty knowledge on the part of Turner and identity. Jacobson v. United States, 356 F.2d 685 (8th Cir.); United States v. Welborn, 322 F.2d 910, 911 (4th Cir.); Williams v. United States, 272 F.2d 40 (8th Cir.); Labiosa v. Government of the Canal Zone, 198 F.2d 282 (5th Cir.).

█ There was no abuse of discretion in refusing to allow Turner a continuance to refute the evidence concerning the false registrations in Hardin County, Kentucky. There is no allegation that he was surprised by this evidence. No witness is identified who could have been produced in rebuttal in event a continuance had been granted. The matter of a continuance is addressed to the sound discretion of the District Judge. Under the facts of this case we find no abuse of discretion. Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375, cert. denied, Ruben v. United States, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199.

Affirmed.