**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Leroy REY, Defendant–Appellant.**

**No. 90–5582.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 30, 1990.

Decided Jan. 22, 1991.

Joe B. Brown, U.S. Atty. (argued), Robert Anderson, Asst. U.S. Atty., Office of U.S. Atty., Nashville, Tenn., for plaintiff-appellee.

Dale Quillen, Nashville, Tenn., Richardson R. Lynn (argued), Malibu, Cal., for defendant-appellant.

Before KEITH and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant-appellant, Leroy Rey, appeals the judgment and conviction for conspiracy to distribute and possession with intent to distribute cocaine.

I.

On October 13, 1989, a senior customs inspector at the main post office in St. Thomas, Virgin Islands inspected and found cocaine in an express mail box. The express mail label on the box read as follows:

TO: Grace Richardson
 816 Murfreesboro Road, Apt. C–28
 Nashville, TN

FROM: David Richardson
 Estate Nadir, 15–B
 St. Thomas, Virgin Islands

In order that the box be subject to a controlled delivery, the inspector forwarded the box to postal officials in Nashville, Tennessee, who turned it over to agents of the Drug Enforcement Administration (DEA). DEA agents obtained search warrants for the package and for the apartment to which it was addressed. When the search warrant was executed on the package, the agents found six bricks of cocaine amounting to approximately six kilos. The bricks of cocaine were replaced with bags of sugar and a sample of approximately two grams of cocaine.

A controlled delivery of the package was made on October 17, 1989, using a postal inspector, Inspector Wilson, disguised as a mailman. At least ten officers were involved in surveilling Apartment C–28. Delivery of the package was not restricted so that it could be signed for by any adult at the address.

At trial, Inspector Wilson testified that the defendant opened the door and identified himself as Leroy Rey. Inspector Wilson asked for "Mrs. Richardson" to whom the package was addressed. Defendant responded, saying "Yes." Inspector Wilson

specified that he was looking for "Grace Richardson" and that defendant "didn't look like Grace." Nevertheless, defendant stated that he would "take it" and signed his name to the express mail label. After the inspector left, defendant used a portable cellular phone to dial a number in the Virgin Islands—809-775-3601. Shortly thereafter, defendant left by the rear door of the apartment building and was arrested as he began to drive away. Upon his apprehension, the defendant identified himself as Leroy Rey, acknowledged that he was living in Apartment C-28, and, upon being advised of a search warrant for his apartment, permitted peaceful entry.

The package was found, unopened, within a foot or two of the door. The officers executed the search warrant for the apartment, which led to the discovery of a variety of electronic equipment, including the following:

1. mobile/cellular telephone (and warranty card for the mobile telephone made out to Leroy Rey, 816 Murfreesboro Road, Apt. C-28, Nashville, Tennessee);
2. beeper;
3. GE answering machine (this was found in the bedroom of Judith Arndell, the defendant's sister);
4. electronic police scanner;
5. wireless remote microphone and receiver;
6. portable CB radio;
7. Panasonic cassette recorder.

The officers also found an axe/wrecking bar, a box of 9 mm. ammunition, $10,000 worth of men's jewelry, a printed funeral service for Grace Richardson, and numerous books, including the following:

1. *DEA Domestic Operations Guidelines;*
2. *How to Launder Money;*
3. *Tax Havens in the Caribbean;*
4. *Police Call Radio Guide* (with two handwritten pages of notes contained therein);
5. *Surveillance Communications Counter-measures;*
6. *Undercover Operations;*
7. *Methods of Disguise;*

8. *Creating and Maintaining Alternative Identities;*
9. *Crime Scene Search and Physical Evidence Handbook;*
10. *High Times Magazine* (September, October, and November of 1989).

In addition, various papers and notes were found containing names and dollar amounts which were indicative of "owe sheets" used in drug trafficking.

On November 15, 1989, defendant Rey was indicted by a federal grand jury and charged with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Defendant filed a Motion for a Bill of Particulars on December 11, 1989, requesting the district court to direct the U.S. Attorney to furnish the names of co-conspirators. The motion was denied.

On December 13, 1989, defendant filed a Motion for a Special Verdict Request to Jury, requesting the court to order the jury to state the amount of cocaine possessed or sold and the percentage of purity. This motion was denied.

On December 21, 1989, defendant filed a motion to suppress evidence. The motion was denied after a hearing was held on January 12, 1990. At the end of the suppression hearing, the court also denied the three motions in limine, which defendant had filed, seeking exclusion from the trial of any evidence referring to a specific quantity of cocaine, certain electronic equipment or certain publications.

During trial, Special Agent Keller of the DEA testified how the electronic equipment, publications, and written materials were indicative of illegal drug trafficking. Testimony revealed that defendant had accepted delivery of the box addressed to "Grace Richardson" even though he knew that Grace Richardson, his aunt, was dead. The defendant had attended her funeral in the Virgin Islands in September 1989 and had remained in the Virgin Islands for several weeks thereafter.

Defendant's sister, Ms. Arndell, who also lived at apartment C-28, testified that their

brother-in-law was Alton Alexander Phillip, who lived in the Virgin Islands. It was determined that it was his phone number (809–775–3601) to which defendant placed a call three minutes after delivery of the box.

Other evidence established a connection between the telephone number "809–775–3601" and the return address on the box containing the cocaine. An expert document analyst determined defendant did not write the address on the express mail label on the box, indicating that a second person was involved.

Defendant was found guilty on both counts and sentenced to a term of imprisonment for 170 months and a fine of $4,000,-000.

Defendant timely filed a notice of appeal on April 6, 1990.

## II.

■ Appellant Rey alleges that the district court erred by denying his motion to suppress the search of his residence because the search warrant was not supported by probable cause. Appellant argues that probable cause for an anticipatory search warrant existed only for the seizure of the controlled delivery package and for nothing else. Appellant alleges that Agent Keller's actual affidavit for the search of the apartment refers only to the controlled delivery and that he had no knowledge of Rey or any illicit activity in the apartment prior to the delivery. Appellant relies on *United States v. Garcia*, 882 F.2d 699 (2d Cir.1989), in which the court found that additional facts besides the controlled delivery had given rise to probable cause to believe that the apartment searched was being used as a storage and distribution center for drugs. In *Garcia*, drug couriers, who had become govern-

ment informants, had been given the telephone number of the codefendant's apartment and there was evidence that one of the couriers had previously delivered drugs to the apartment. Also federal agents had seen at least one other defendant suspected of drug activity enter and leave the apartment. *Id.* at 704. The second circuit stated, "Had the only evidence been that duffel bags were being delivered to the apartment, the scope of the search, described in the warrant [for 'cocaine, traces of cocaine, currency, drug records, and narcotics paraphernalia'] might have been overbroad." *Id.*

In the present case, at the suppression hearing, the affiant testified that the apartment had been under surveillance and defendant Rey had been seen at the apartment on the day before the delivery. The affiant also testified that the mail carrier for the apartment claimed a number of "these types of packages" had been delivered to the same location in the past. Thus, contrary to appellant's assertions, there were indications of prior illicit activity.

Moreover, other circuits have rejected the claim that a warrant authorizing a search for drug paraphernalia as well as contraband is overbroad, even though based only on the knowledge of a controlled delivery. *United States v. Washington*, 852 F.2d 803, 804–05 (4th Cir.), *cert. denied*, 488 U.S. 974, 109 S.Ct. 512, 102 L.Ed.2d 547 (1988) ("sure course" of destination of controlled delivery package addressed to fictitious name gives probable cause for anticipatory warrant to search premises to which package is addressed for "a quantity of drug paraphernalia, papers, notes, bank records, identification documents and other items of evidence"); [1]

---

1. In *Washington,* a prior investigation revealed the names of the occupants of the residence. 852 F.2d at 804 n. 2. The court stated that the fact that the package was addressed to someone other than the occupants was not relevant because it is common knowledge that fictitious names are frequently used in illicit drug trafficking. *Id.* at 804. The only evidence of probable cause to issue a search warrant for drug paraphernalia given in the opinion was that the package was "on a sure course to its destination,

as in the mail...." *Id.* Although the names of the occupants of the residence were known, there is no indication in the opinion that the investigation revealed any suspicion of prior drug activity on the part of defendant as was the case in *Garcia*. We believe that Judge Hall stated in the opinion in *Washington* all of the relevant facts on which he relied in making a determination of probable cause. Moreover, the wording of the affidavit in *Washington*

*United States v. Malik,* 680 F.2d 1162, 1165 (7th Cir.1982) (defendants' claim that search warrant issued after a controlled delivery of baseballs containing drugs was too broad to allow agents to seize papers and documents related to drug dealing has no merit if warrant is specific and details the facts surrounding the discovery of the drug subject to the controlled delivery);[2] *United States v. Dubrofsky,* 581 F.2d 208, 213 (9th Cir.1978) (search of defendant's residence pursuant to warrant for "passports, correspondence, telephone bills and other evidence of residence, narcotics, and narcotics paraphernalia" is upheld following arrest of defendant who received controlled delivery elsewhere).

Based on these three cases, we believe that in the circumstances of the present case there was probable cause to issue a warrant for "controlled substances, records of narcotics activities, documents, paraphernalia and other evidence of drug dealing and importation."

### III.

■ Appellant next contends that the district court erred by denying the motion to suppress because the search warrant did not specify that the search could only be executed after the controlled delivery had been made. However, this argument has no merit. Although it may be preferable to make such a statement, the warrant's silence on this point does not render it void. *Tennessee v. Wine,* 787 S.W.2d 31 (Tenn. App.1989). In the present case, the affidavit requested a warrant for a search "subsequent to the delivery of the package tomorrow." A reasonable inference can be made that the warrant authorizes a search only after the controlled delivery has occurred. If the controlled delivery had not occurred, then the warrant would have been void. *State v. Wahl,* 450 N.W.2d 710

(N.D.1990). Therefore, we find that the warrant was not defective because it did not expressly specify that the search could be executed only after the controlled delivery had been made.

### IV.

Appellant next alleges that the district court erred by admitting into evidence certain trial exhibits.

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 402 provides that evidence which is not relevant is not admissible. The defendant contends that the trial court erred by admitting irrelevant evidence, specifically a mobile phone and warranty card, beeper, answering machine, police scanner, microphone, CB radio, cassette recorder, pilot tapes, and several books taken from a larger collection.

■ To be relevant, the electronic equipment and books must tend to prove that the defendant conspired to distribute or possess with intent to distribute cocaine. The United States was permitted to introduce the electronic equipment and books into evidence because such items are sometimes used by drug dealers. While one or two of the items taken by themselves would not indicate conspiracy or possession with an intent to distribute cocaine, the entire collection of items makes the charge more probable; thus, the evidence is relevant.

Next appellant Rey argues that even if the evidence is relevant, the unfair prejudice and risk of misleading the jury substantially outweighed the evidence's probative value so that the evidence should have

---

("Based on the probable cause developed in this investigation") is similar to the wording in the affidavit in the present case.

**2.** In *Malik,* a prior investigation revealed only to whom the package was to be delivered. After the defendants received the bag with the contraband hidden in baseballs in it, they entered an

apartment and were then arrested. A search warrant was later executed on the apartment not only for the baseballs but also for items related to drug dealing. There is no indication in the opinion that the apartment entered was the defendants' residence or that it had previously been involved in drug-related activity.

been excluded under Federal Rule of Evidence 403, which states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The trial court has broad discretion in deciding admissibility issues under Rule 403. *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1154 (6th Cir.1988); *United States v. Brady*, 595 F.2d 359, 361 (6th Cir.1979), *cert. denied*, 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979). In order to exclude evidence under Rule 403, the evidence must be more than damaging; it must be unfairly prejudicial. *Hines*, 850 F.2d at 1154; *United States v. Mendez–Ortiz*, 810 F.2d 76, 79 (6th Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987). Unfair prejudice means an undue tendency to suggest a decision on an improper basis. *United States v. Vandetti*, 623 F.2d 1144, 1149 (6th Cir.1980). In reviewing the trial court's ruling on a Rule 403 objection, the reviewing court must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect. *United States v. Kelley*, 849 F.2d 999, 1003 (6th Cir.1988).

The government contends that the electronic equipment and books are probative of the defendant's intent to distribute cocaine because the items constitute tools of the drug trade. Appellant Rey maintains that these items pose a risk of misleading the jury and are unfairly prejudicial. However, the items in question are not of a type to inflame the jury. Such neutral items are not likely to suggest a decision on an improper basis to a jury. Although the evidence may be damaging to the defendant's case, it is not unfairly prejudicial. Therefore, we find that the district court did not abuse its discretion in admitting the evidence.

## V.

Appellant argues that the district court erred in denying his motion for a bill of particulars, seeking the identity of co-conspirators.

 The grant or denial of a motion for a bill of particulars lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *United States v. Paiva*, 892 F.2d 148, 154–55 (1st Cir.1989); *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir.1981); *Turner v. United States*, 426 F.2d 480, 483 (6th Cir.1970), *cert. denied*, 402 U.S. 982, 91 S.Ct. 1646, 29 L.Ed.2d 148 (1971). Proof of abuse of discretion "requires a showing of actual surprise at trial and prejudice to the defendant's substantial rights by the denial." *United States v. Paiva*, 892 F.2d at 154; *United States v. Colson*, 662 F.2d at 1391.

 Defendant Rey claims his counsel's ability to prepare for trial was impeded because he did not have the name of the co-conspirator before trial. The government was not required to furnish this information. A defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons, a prerequisite to obtaining a conspiracy conviction. *Rogers v. United States*, 340 U.S. 367, 375, 71 S.Ct. 438, 443, 95 L.Ed. 344 (1951); *United States v. Piccolo*, 723 F.2d 1234, 1238–39 (6th Cir.1983), *cert. denied*, 466 U.S. 970, 104 S.Ct. 2342, 80 L.Ed.2d 817 (1984). As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators. "It is the grand jury's statement of the 'existence of the conspiracy agreement rather than the identity of those who agree' which places the defendant on notice of the charge he must be prepared to meet." *Piccolo*, 723 F.2d at 1239, *quoting United States v. Davis*, 679 F.2d 845, 851 (11th Cir.1982). Defendant Rey knew that he was charged with conspiracy to possess cocaine with intent to distribute. Defendant also knew the dates involved as stated in the indictment. De-

fendant has not demonstrated that his lack of knowledge of the co-conspirator's name before trial either surprised him, prejudiced him, or impeded his counsel's ability to prepare for trial. Thus, the district court did not abuse its discretion in denying defendant's motion for a bill of particulars.

## VI.

■ Appellant finally argues that the district court erred by refusing to submit a special interrogatory concerning the amount of cocaine defendant possessed. However, we find that this allegation has no merit.

Title 21, United States Code, Section 841(a)(1) only requires that there be unlawful possession with intent to distribute "*a controlled substance.*" (emphasis added). The fact-finding function of the jury is to return a verdict of guilt or innocence and the quantity requirements of section 841 are applicable only to sentencing. Because the quantity possessed is not an element of the offense under 21 U.S.C. § 841(a), a special interrogatory regarding the amount of cocaine involved is not required by the statute.

Moreover, the total amount of cocaine originally sent is the amount considered for sentencing under the United States Sentencing Guidelines. *U.S. v. White*, 888 F.2d 490, 498 (7th Cir.1989). In *White*, the defendant argued that his sentence should have been based upon the trace amount, or representative sample, used for purposes of a controlled delivery, rather than the total amount of cocaine originally in the package intercepted by customs officials. The court rejected this theory, stating:

> Had the packages slipped by the Customs Service, White would have received 302 grams; had the DEA decided to make a controlled delivery of the original packages instead of removing most of the drug, the same 302 grams would have arrived. The nature and seriousness of White's conduct is the same no matter how much of the cocaine the DEA took out.

*Id.* The court discussed the functions of the Guidelines and found that the appropriate sentence depends on the original quantity, the offense level being the same as if the object of the conspiracy or attempt had been completed. *Id.* at 498–99.

In the present case, the evidence clearly showed beyond a reasonable doubt that the package originally contained six kilograms of cocaine. The district court did not err by refusing to allow the jury to decide the amount of cocaine since determining the amount for sentencing is solely a function of the court.

To conclude, the judgment of the district court is hereby affirmed.

KEITH, Circuit Judge, concurring.

Although I concur with the majority's conclusion and its analysis on all but one issue, I separately concur to indicate my concerns with the majority's argument in Section II addressing the scope of the warrant.

Defendant asserts that probable cause only existed for the seizure of the drugs contained in the controlled delivery package and not a search of the apartment for all evidence of drug dealing. The warrant was for a search for "controlled substances, record of narcotic activities, documents, paraphernalia and other evidence of drug dealing and importation." Appellee brief at 26.

I find Defendant's argument persuasive. The fourth amendment requires particularity in warrants. U.S. Const. amend. IV. The Second Circuit, in ruling that there was ample other evidence in the case before it to permit a search of the premises receiving a controlled delivery of drugs, cautioned against broad warrants where there is no evidence of drug dealing other than the controlled delivery. "Had the only evidence been that the duffel bags were being delivered to the apartment, the scope of the search, described in the warrant [for cocaine, traces of cocaine, currency, drug records, and narcotics paraphernalia], might have been overbroad. Here, however, additional facts in the supporting affidavit gave rise to probable cause to believe that the apartment was being used as a storage and distribution center for drugs." *United States v. Garcia*, 882 F.2d 699, 704 (2d Cir.1989). Unlike the facts of *Garcia*, the agents in the instant case

knew nothing except that this package had been placed in the mails addressed to the apartment where defendant later signed for the package. The *Garcia* court also noted that "... magistrates must also carefully craft anticipatory warrants to limit the scope of the warrant authorized search to items which law enforcement officers have cause to believe are located on the premises." *Id.* The officer here had no knowledge of Rey, Rey's sister, or of any activity in the apartment.

The majority cites cases in support of the proposition that controlled delivery alone creates probable cause for the search of a residence. These cases, however, in my opinion do not support that proposition. The facts of two of these cases clearly indicate that there had been a greater investigation into the targeted premises and more information connecting the premises to drug trafficking.

In *United States v. Malik*, 680 F.2d 1162 (7th Cir.1982), the search warrant was issued after an investigation of both the defendant and the background of the drug transaction. Prior to the search, the agents contacted the addressee who said the shipment was for the defendant and told the agents about arrangements for the transfer of the drugs to the defendant. *Id.* at 1163. In *United States v. Dubrofsky*, 581 F.2d 208 (9th Cir.1978), the place of delivery was searched only upon valid oral consent. A subsequent search was conducted at the defendant's residence, but was based upon an affidavit setting forth the details of the defendant's arrest, including that soon after the controlled delivery, he had been found in a locked basement of the place of delivery with the opened parcel. *Id.* at 210, 212. It was in this context that the court held that "a warrant may be upheld when the nexus between the items to be seized and the place to be searched rests not upon direct observation, but on the type of crime, nature of the items, and normal inferences where a criminal would likely hide contraband." *Id.* at 213.

The majority does have support from *United States v. Washington*, 852 F.2d 803 (4th Cir.1988), where the only investigation mentioned in the opinion is one that revealed that the premises was occupied by the defendant and two others. *Id.* at 804 n. 2. The defendant, however, had not raised the issue presented here. Accordingly, there may have been more information available to the agents and the magistrate which was not detailed in the opinion. The opinion does contain a quote from the affidavit in support of the search warrant. An officer in *Washington* had sworn that he had developed probable cause in his investigation that drug paraphernalia, papers, notes, and bank records, and identification documents were secreted inside the premises. While the basis for this probable cause is not detailed in the section of the affidavit reproduced in the opinion, there is at least an indication that there had been an investigation which uncovered information that evidence other than just the package sent by controlled delivery would be in the apartment.

The law is unclear on the permissible scope of a search when no connection between the premises and drug dealing other than that drugs have been addressed to the premises has been revealed by an investigation. The cases cited by the majority indicate that when there is an investigation of the addressee disclosing information that amounts to probable cause when considered with the addressed package, a warrant to search the entire apartment for drug related material is appropriate. The Second Circuit's caution would protect against searches of potential innocent receivers of drugs who have not been linked to the drug packages.

The government had probable cause to know the package of drugs was on the premises, and wishes to draw as a necessary conclusion from that alone that probable cause that other evidence of drug dealing would be present. The government, someone by mistake, or someone seeking to subject another to an investigation, could mail a controlled substance to a party and thereby provide probable cause for a search of an entire residence, including an examination of all papers to determine if they are drug records, for evidence of drug activity. I do not believe those hypotheticals or other possible explanations are so rare that it is probable that if an apartment is the addressee of a controlled substance,

it is reasonable for a government agent to conclude that there is probable cause to believe there will be other evidence of illegal drug activity at the location. This would be an expansion beyond what the cases cited to support the proposition have thus far held and a license for expansive searches of apartments, including all writings, on very limited evidence.

The case law is close enough, however, to make this particular search in good faith based upon a warrant approved by an impartial magistrate and therefore would not require reversal. *United States v. Leon,* 468 U.S. 897, 913, 104 S.Ct. 3405, 3415, 82 L.Ed.2d 677 (1984). The agents were reasonable to rely on the warrant since the conclusion in this opinion that the warrant was not supported by probable cause was based on an issue not resolved by the circuits. The agent was not unreasonable in accepting the magistrate's determination.

I therefore concur in the result, finding the evidence found in the search admissible under the good faith exception as to the breadth of the search warrant. I concur in the reasoning and conclusions as to all of the other issues addressed in the majority opinion.