991 F.2d 797
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William MUMFORD (92-1118) and David Simard (92-1411),
Defendants-Appellants.
 Nos. 92-1118, 92-1411.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1993.
 
 Before GUY and NORRIS, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant Simard appeals his jury conviction and sentence for possession with intent to distribute cocaine base within 1000 feet of a public school in violation of 21 U.S.C. § 841(a)(1) and § 845(a). Appellant Mumford appeals his jury conviction and sentence for possession of cocaine base in violation of 21 U.S.C. § 844(a). Appellants challenge the denial of their motions for judgment of acquittal on all counts except the conspiracy count, certain jury instructions, and an upward departure in Mumford's sentence. For the reasons stated below, we affirm.
 
 FACTS
 
 2
 Pursuant to a tip, DEA agents and members of the Detroit Police Department Drug Task Force conducted surveillance at a Detroit residence on December 17, 1990. Appellant Mumford was seen entering the residence at about 9:30 AM. Around noon, Officer Robert Feld observed seven people go to the door of the residence separately, make an exchange, and leave. Feld attempted to make an undercover drug purchase, but was rebuffed because he was not known. However, during this attempt, he witnessed a sale of crack cocaine at the residence. Following this incident, another officer went to obtain a search warrant. Shortly after 2:00 PM, officers observed Frank Sandoval arrive, enter and remain in the residence for a few minutes, and leave. One of the officers would later testify that Appellant Simard had admitted Sandoval and others to the house. Officers followed Sandoval and discovered that he had crack cocaine in his possession.
 
 
 3
 Subsequently, the task force executed the search warrant. Officers discovered Appellant Mumford in a bedroom. As they approached, Mumford arose from the bed and dropped a plastic bag containing two rocks of crack cocaine weighing 1.16 grams. A loaded .45 caliber semi-automatic gun was on the bed directly behind Mumford. Mumford was intoxicated at the time of his arrest. Officers encountered Appellant Simard in the kitchen. As they approached, Simard threw down three plastic bags containing rocks of crack cocaine weighing 4 grams.
 
 
 4
 On March 26, 1991, a federal grand jury returned indictments against Mumford, Simard, and a third defendant. Count One charged the three defendants with conspiracy to possess with intent to distribute and to distribute cocaine base. Mumford and Simard were also charged with possession with intent to distribute cocaine base within 1000 feet of a public school and the lesser included offense of possession with intent to distribute cocaine base. Mumford was also charged with use of a firearm during a drug trafficking crime and being a felon in possession of a firearm. The felon-in-possession charge was dismissed by the Government prior to trial.
 
 
 5
 Mumford and Simard proceeded to trial in November 1991. Mumford was found guilty of simple possession of cocaine base and sentenced to 12 months in prison. Simard was found guilty of possession with intent to distribute cocaine base within 1000 feet of a public school and sentenced to 120 months in prison. This appeal followed.
 
 ANALYSIS
 Motion for judgment of acquittal
 
 6
 Mumford and Simard first argue that the district court erred in denying their motions for judgment of acquittal under Fed.R.Crim.P. 29. Both defendants made Rule 29 motions at the close of the Government's case. However the docket reflects that only Simard renewed his Rule 29 motion after the verdict was returned. Mumford's failure to renew his motion constitutes a waiver of an objection to the sufficiency of the evidence and under such circumstances, this court will not review the district court's denial of the Rule 29 motion absent a showing of a manifest miscarriage of justice. United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984). Mumford's brief raises no indication that the district court's denial of his Rule 29 motion created a manifest miscarriage of justice. Thus, we decline to grant review of the sufficiency of the evidence in Mumford's case.
 
 
 7
 With regard to Simard, this court succinctly stated the standard of review for denial of a Rule 29 motion in United States v. Gibson, 675 F.2d 825, 829 (6th Cir.), cert. denied, 459 U.S. 972 (1982).
 
 
 8
 In deciding whether evidence is sufficient to withstand a motion for an acquittal, we must view the evidence and all reasonable inferences in the light most favorable to the government. If the evidence is such that we conclude that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is one for the jury. If we conclude that a reasonable doubt is raised, we must reverse a denial of an acquittal motion.
 
 
 9
 The test is the same whether the evidence is direct or circumstantial. United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986).
 
 
 10
 The essential elements for a violation of 21 U.S.C. § 841(a)(1) are the knowing or intentional possession with the intent to distribute a controlled substance. In this case, the evidence is largely circumstantial. Surveillance by several drug agents revealed that crack cocaine was being distributed from the residence. One of the drug agents testified that he saw Simard admit at least three drug customers to the residence. At the time of the raid, Simard was found holding several bags containing a total of four grams of crack cocaine. From the fact that Simard was seen admitting customers to the house, the jury could infer that he was more than a mere visitor and was participating in the crack distribution business at the house. Furthermore the packaging of the crack in his possession in separate bags is indicative of intent to distribute. The events took place within 1000 feet of an elementary school. Thus we conclude that viewing the evidence in the light most favorable to the Government, a reasonable mind could fairly find guilt beyond a reasonable doubt.
 
 Evidentiary instruction
 
 11
 Defense counsel requested a special jury instruction to the effect that the jurors should disregard all evidence except the 1.16 grams of cocaine base and the .45 caliber firearm that related to Mumford and the 4 grams of cocaine base that related to Simard. The district court denied the request finding that the other evidence, including customer traffic at the house, the drugs recovered from Sandoval after he left the house, and the other guns found in the house, was relevant in establishing intent to distribute.
 
 
 12
 Under Fed.R.Evid. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed, inter alia, by the danger of unfair prejudice or misleading the jury.
 
 
 13
 Simard argues that he was unduly prejudiced by the admission of this evidence. He notes that there was no connection between him and any of the three guns found in the residence and he did not own or reside at the house. Furthermore, Simard argues that it was never proven that Sandoval acquired the drugs at the house. He notes that this evidence was obviously important to the jury because they requested during their deliberations the weight of the cocaine taken from Sandoval. Simard concludes that it was likely that this evidence misled the jury and caused him prejudice. This court faced a similar challenge in United States v. Rey, 923 F.2d 1217 (6th Cir.1991). In Rey, the defendant argued that the admission of such items as a mobile phone, beeper, answering machine, CB radio, cassette recorder, and certain books was irrelevant and prejudicial. The court reasoned that collection of items made the charge more probable and therefore was relevant evidence. Id. at 1221. The same is true of the customer traffic, recovered drugs, and guns in this case. This evidence is indicative of customs and tools of the drug trade. The existence of this evidence makes the charge of intent to distribute cocaine more probable and thus, it is relevant.
 
 
 14
 With regard to prejudice, the court in Rey, supra, stated:
 
 
 15
 The trial court has broad discretion in deciding admissibility issues under Rule 403. In order to exclude evidence under Rule 403, the evidence must be more than damaging; it must be unfairly prejudicial. Unfair prejudice means an undue tendency to suggest a decision on an improper basis.
 
 
 16
 Id. at 1222. (Citations omitted).
 
 
 17
 While this evidence was probably damaging to the defense, we do not think it was unfairly prejudicial. The visitors to the house and the drugs recovered from Sandoval were relevant facts from which the jurors could draw their own inferences. Simard complains he had no association with the guns found at the house. However, the judge read the indictment as a part of the jury instructions. The indictment charged only Mumford with use of a firearm. Thus, we conclude that the charges against each defendant were clear and no undue prejudice resulted from the admission of this evidence.
 
 Lesser included offense instruction
 
 18
 Mumford's counsel reserved his opening statement until after the close of the Government's case. In that statement, he conceded that Mumford "may very well have possessed drugs...." However, he stated that there was no evidence that Mumford possessed drugs with the intent to sell them, and therefore the jury should find him not guilty as charged. After the parties concluded their proofs, the Government requested a jury instruction on the lesser included offense of simple possession pursuant to Fed.R.Crim.P. 31(c). Mumford's counsel objected. The trial court allowed the instruction. Mumford now argues that the district court allowed the Government to amend the indictment thereby unduly prejudicing him because he did not have notice of the charge until after his attorney had essentially admitted possession in his opening argument.
 
 
 19
 It is well settled that an indictment may not be materially amended except by resubmission to the grand jury. Stirone v. United States, 361 U.S. 212, 217 (1960). "An amendment to an indictment occurs when there is an alteration, literal or in effect, in its terms. Such amendments are deemed prejudicial per se and a conviction resting upon such an amended indictment must be reversed." United States v. Burkhart, 682 F.2d 589, 591 (6th Cir.), cert. denied, 459 U.S. 915 (1982) (citations omitted). One of the principal reasons for the rule is to give the defendant notice of the charges against him so he can prepare an adequate defense. Id.
 
 
 20
 In overruling Mumford's objection to the instruction, the district court stated that a person charged with possession with intent to distribute a narcotic was also charged with possession of the narcotic and the defense should not have been surprised by the inclusion of the lesser included offense. We agree.
 
 
 21
 Fed.R.Crim.P. 31(c) provides that a "defendant may be found guilty of an offense necessarily included in the offense charged...." The Supreme Court recently adopted the elements approach to Rule 31(c) under which "one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense." Schmuck v. United States, 489 U.S. 705, 716 (1989). In this case, simple possession is clearly an element of possession with intent to distribute. Thus, the lesser included offense instruction was properly given. That Mumford chose a "user" defense and virtually admitted possession may have been a strategic error on his part. However, this in no way changes the propriety of the instruction.
 
 Upward departure
 
 22
 Mumford contends that the district court abused its discretion in making an upward departure in his sentence because it failed to state a proper basis for the departure. The Sentencing Guidelines prescribed a sentencing range of two to eight months. However, the judge sentenced Mumford to twelve months on the grounds that his criminal history category did not adequately reflect the seriousness of his past criminal conduct or his propensity to commit future crimes.
 
 
 23
 Mumford concedes that due to his drug addiction, he has resorted to a pattern of criminal activity. However, he argues that there was no evidence that he had participated in criminal activities other than those represented in his criminal history category and therefore, he should have been sentenced within the Guidelines.
 
 
 24
 This court set forth in United States v. Joan, 883 F.2d 491 (6th Cir.1989), a three-prong test for reviewing sentences that depart from the Guidelines. The first prong involves a question of law regarding whether the circumstances of the case are sufficiently unusual to warrant departure. Id. at 494. The second prong involves the determination as to whether there is a factual basis to justify the departure. Id. Finally, the degree of departure is measured by a standard of reasonableness. Id. at 495-6. Under § 4A1.3 of the Guidelines, the court is authorized to depart from the applicable Guidelines range "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes...." In this case, Mumford had at least one prior drug conviction that was too old to be used in his criminal history computation. Additionally, the court noted that Mumford's probation inexplicably had not been violated when he committed his second drug offense, but if this had occurred, Mumford could have been sentenced up to two years in prison as a second offender. Mumford does not dispute his previous convictions or the fact that he could have been sentenced as a second offender. Thus, we conclude that the district court had a proper legal and factual basis to justify an upward departure.
 
 
 25
 In assessing the reasonableness of the departure, the court should consider, inter alia, the seriousness of past criminal conduct, the likelihood of recidivism, deterrence, isolation, and rehabilitation. Joan, 883 F.2d at 496. In this case, Mumford has a criminal history of drug use dating back almost twenty years. Thus, it seems that there is a high likelihood of recidivism. The court noted that one of its reasons for making an upward departure was to isolate Mumford for as long as possible in a drug-free environment in the hope that he could be rehabilitated. Furthermore, the departure only increased Mumford's sentence by four months over the maximum of the applicable Guidelines range. Thus we conclude that the upward departure was reasonable.
 
 CONCLUSION
 
 26
 For the foregoing reasons, we affirm the convictions and sentences of Mumford and Simard.