995 F.2d 1068
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Chidi Chris Samuel OTOBO, Defendant-Appellant.
 No. 92-1754.
 United States Court of Appeals, Sixth Circuit.
 June 9, 1993.
 
 Before: JONES, BATCHELDER, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Chidi Chris Samuel Otobo, was indicted in the United States District Court for the Eastern District of Michigan, Southern Division, on four counts[1], viz., 1) violation of 21 U.S.C. §§ 841(a)(1) and 846, conspiracy to distribute and to possess with intent to distribute heroin; 2) and 3) violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, distribution of heroin; 4) violation of 21 U.S.C. § 841(a)(1), aiding and abetting in the possession with intent to distribute heroin. Defendant filed a Motion To Suppress Evidence seeking to suppress evidence allegedly obtained as the result of an illegal search. The district court, after a hearing, denied the motion. Defendant pled guilty to count one as part of a Rule 11 plea agreement, but later withdrew the plea with the permission of the court. After a trial by jury, defendant was found guilty on counts one, two and four, and not guilty on count three.[2] Defendant was sentenced to concurrent terms of 97 months imprisonment on each count. Defendant filed a timely Notice of Appeal.
 
 I.
 
 2
 In April, 1991, defendant telephoned Fred Rease for the purpose of engaging in a heroin transaction, not knowing that Rease was a confidential informant cooperating with the Drug Enforcement Administration (DEA). Rease returned the call on April 10, 1991, using a special telephone with recording capabilities. The purpose of the phone call, and a later series of calls, was to induce defendant to bring a quantity of heroin to Detroit. Rease offered to pay $190,000.00 for one kilogram of heroin, in addition to giving defendant a $10,000.00 bonus for transporting the drugs from Chicago to Detroit. Defendant agreed to the deal.
 
 
 3
 On May 16, 1991, defendant checked into room 1115 at a Days Inn in Detroit. Co-defendant Adigwu checked into room 1118. Rease met defendant at the motel on the following day. When defendant produced a sample of the heroin, Rease requested a larger sample. Otobo stated that the supplier would not meet Rease, but Rease should wait at the hotel restaurant and defendant would get a larger sample. Defendant later met Rease in the restaurant. The pair went to defendant's room where Rease was given 100 grams of heroin.
 
 
 4
 Rease turned the sample over to the DEA, which used it to obtain a search warrant. While in the process of obtaining the warrant, DEA agents observed defendant talking with Adigwu. A perusal of the motel register revealed that Adigwu had checked in at the same time as defendant.
 
 
 5
 Upon obtaining the search warrant, DEA agents searched room 1115, but found no heroin. The agents then knocked on the door of room 1118, Adigwu's room, and asked for permission to search his room. DEA agents testified at trial that Adigwu orally consented to the search. Inside the room, the agents found a locked suitcase. Adigwu denied ownership of the case, claiming it belonged to defendant. The DEA agents took the suitcase to room 1128, where DEA agents were holding defendant. Defendant denied ownership of the suitcase and stated he did not care whether it was opened.
 
 
 6
 The agents remembered seeing a key ring, with suitcase keys on it, while they were searching defendant's room. They went back to Room 1115, seized the keys, and brought them to Room 1128 where Otobo was being held. Although defendant admitted the key ring was his, he stated the keys could not open the locked suitcase because it was not his. Nevertheless, the keys did open two of the locks on the bag, leaving only a combination lock. Defendant denied knowledge of the combination. As a result, the DEA agents forced open the bag and discovered $700 in cash and over 900 grams of heroin. Defendant admitted the heroin belonged to him and stated that if he returned to Chicago without it he would be killed.
 
 II.
 
 7
 Defendant contends that the district court erred by refusing to grant the Motion To Suppress he filed before trial. Defendant argues that the drugs were improperly taken from room 1118 because the search warrant listed room 1115. Furthermore, defendant argues that Adigwu did not voluntarily consent to the search of room 1118.
 
 This court has previously held as follows:
 
 8
 The Fourth Amendment protects a person's legitimate expectation of privacy from invasion by government action. Smith v. Maryland, 442 U.S. 735, 740 (1979). When considering whether a person has a legitimate expectation of privacy, we must make the familiar two-prong inquiry: first, whether the individual, by his conduct, has exhibited a subjective expectation of privacy; and second, whether that expectation is one that society accepts as reasonable. United States v. Padin, 787 F.2d 1071, 1075 (6th Cir.), cert. denied, 479 U.S. 823 (1986).
 
 
 9
 United States v. Meriwether, 917 F.2d 955, 958 (6th Cir.1990).
 
 
 10
 Moreover, Fourth Amendment rights are personal and may not be asserted by a third party. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). Defendants charged with crimes of possession may only claim the protections provided by the Fourth Amendment if their own rights have been violated. United States v. Salvucci, 448 U.S. 83, 85 (1980). When a defendant is aggrieved by an allegedly illegal search of a third party's property, the Fourth Amendment rights of that defendant have not been infringed. United States v. Knox, 839 F.2d 285, 293 (6th Cir.1988) cert. denied, 490 U.S. 1019 (1989) citing Rakas, 439 U.S. at 134.
 
 
 11
 In the instant case, the suitcase was not found in defendant's motel room. Whether or not Adigwu voluntarily consented is not an issue which defendant can raise. If no consent was given, Adigwu's rights were violated and not defendant's. Furthermore, defendant was asked if the suitcase belonged to him. He stated that it did not. Since defendant denied owning the suitcase he could have no legitimate interest in the privacy of the contents. Accordingly, the district court properly denied defendant's Motion to Suppress Evidence.
 
 
 12
 Defendant also contends that the district court erred by not suppressing the key ring from being introduced into evidence. The DEA agents noticed the keys during the initial search of room 1115 and retrieved them upon finding the suitcase in room 1118. Defendant argues that the seizure of the keys was not specified in the search warrant, and, therefore, the seizure was illegal and the evidence should have been suppressed. Further, defendant asserts that the seizure of the keys could not be supported under the "plain view" exception to the warrant requirement because the illicit purpose of the keys was not readily apparent.
 
 
 13
 The district court allowed the keys to be admitted, holding that as the search continued, it became apparent that the keys were material to the purpose of the search warrant. The United States Supreme Court has upheld the validity of searches where part of the evidence described in the warrant included the instrumentalities of the crime. Andresen v. Maryland, 427 U.S. 463 (1976). This court has held that the use of a generic term or general description is not a per se violation of the Fourth Amendment. United States v. Blakeney, 942 F.2d 1001, 1027 (6th Cir.1991) cert. denied, 112 S.Ct. 881 (1992). In the case at bar, the search warrant provided, in relevant part, for the seizure of "the means and instrumentalities utilized in the possession...." Hence, when it became clear to the DEA agents that the suitcase probably held the contraband heroin, they were entitled to seize the key ring in order to attempt to unlock the suitcase. It would be ludicrous to require a Magistrate Judge to specifically identify suitcase keys in the event a suitcase was found and determined to be locked. Once the agents viewed the key ring in plain view, in the room they were validly executing a search warrant in, they were then entitled to seize the key ring after the discovery of the suitcase. Accordingly, the district court did not err in failing to suppress the key ring.
 
 III.
 
 14
 Defendant contends the district court erred by not dismissing the conspiracy count against him after his co-defendant was dismissed from the case. Defendant argues that after Adigwu's Motion for Acquittal was granted, there was no one with whom he could have conspired, and so, he could not have been found guilty of conspiracy. Defendant correctly notes that he could not be convicted of conspiring with Fred Rease because Rease was a government informant. Hence, defendant argues that the district court should have granted his motion for acquittal with respect to the conspiracy charge.
 
 
 15
 The government acknowledges that it takes at least two people to support a conspiracy charge. The government, however, asserts that a jury may credit evidence of an un-indicted co-conspirator to support a conspiracy theory. That is precisely what the government argues happened in the instant case.
 
 
 16
 The government's interpretation of the law is correct. Where a defendant conspires with un-indicted co-conspirators, a defendant may be convicted of a conspiracy. This court recently held as follows:
 
 
 17
 A defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons, a prerequisite to obtaining a conspiracy conviction. As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators. "It is the grand jury's statement of the 'existence of the conspiracy agreement rather than the identity of those who agree' which places the defendant on notice of the charge he must be prepared to meet."
 
 
 18
 United States v. Rey, 923 F.2d 1217, 1222 (6th Cir.1991) (citations omitted ).
 
 
 19
 In the case at bar, the evidence indicated that defendant was working in conjunction with others. During the taped conversations which Otobo had with Rease, Otobo repeatedly referred to unnamed others, saying that he had to get "their" permission to come to Detroit with the heroin. In addition, after the discovery of the heroin, Otobo stated that he could not go back to Chicago without the heroin because he would be killed. Therefore, it was within the province of the jury to determine that defendant was involved in a conspiracy with someone other than Adigwu.
 
 IV.
 
 20
 Defendant contends the district court erred by refusing to grant his Motion For A Mistrial. This motion was made after Adigwu's Motion For Acquittal was granted. Defendant argues that because he was the sole remaining defendant, the jury was likely to convict him.
 
 
 21
 This court will review the denial of a motion for a mistrial for an abuse of discretion. United States v. Chambers, 944 F.2d 1253, 1263 (6th Cir.1991) cert. denied, 112 S.Ct. 1217-18, cert. denied, 112 S.Ct. 1680 (1992). The court will consider the fairness to defendant, while also considering whether a curative instruction to the jury would have eliminated the prejudice, if any, suffered. Id.
 
 
 22
 In the case at bar, the jury was instructed not to consider the absence of Adigwu, nor any evidence solely related to Adigwu. Defendant has cited no law in support of his proposition, nor any evidence that he was prejudiced by any error. Accordingly, it cannot be said that the district court abused its discretion.
 
 V.
 
 23
 Defendant contends the district court erred by denying his motion to dismiss based upon the defense of entrapment. Defendant argues that it was Fred Rease who led defendant into committing the crimes by initiating the transaction and paying defendant a $10,000.00 bonus.
 
 
 24
 Generally, entrapment is a question for the jury. United States v. Cummins, 969 F.2. 223, 228 (6th Cir.1992). When the evidence and testimony indicate a patently clear absence of pre-disposition to commit a crime, the district court may hold, as a matter of law, that the defendant was entrapped. Id. In reviewing such a claim on appeal, this court will view the evidence and all reasonable inferences, in a light most favorable to the prosecution. United States v. Barger, 931 F.2d 359, 366 (6th Cir.1991).
 
 
 25
 In the case at bar, defendant relies on disputed evidence to support his claim. Although he asserts that he did not initiate the contact, the government provided testimony that it was defendant who first called Rease. Furthermore, the evidence also indicates that the $10,000.00 bonus was to entice defendant to bring the heroin to Detroit, not simply to provide the heroin. Hence, when viewing the evidence in a light most favorable to the government, it cannot be said that defendant was entrapped as a matter of law. Accordingly, the district court did not err by refusing to grant defendant's motion to dismiss.
 
 VI.
 
 26
 Defendant contends that he should have been granted an acquittal at the close of the government's case because there was insufficient evidence to sustain a conviction. He first reiterates his claim that once Adigwu was removed, the conspiracy charge should have been dropped. Defendant further claims that there was insufficient evidence that he possessed the drugs because the heroin was not found in his possession.
 
 
 27
 A conviction withstands a sufficiency of the evidence challenge if:
 
 
 28
 [A]fter viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in the government's favor, the evidence is sufficient to justify a reasonable juror's conclusion that each element of the offense has been established beyond a reasonable doubt....
 
 
 29
 United States v. Sturman, 951 F.2d 1466, 1474 (6th Cir.1991) cert. denied, 112 S.Ct. 2964 (1992) citing United States v. Poulos, 895 F.2d 1113, 1117 (6th Cir.1990).
 
 
 30
 In the case at bar, defendant was convicted in count two for providing a sample of heroin which he provided to Mr. Rease. The evidence indicated that he gave Rease this sample himself. Defendant was also convicted in count four of aiding and abetting the distribution of 901.4 grams of heroin. Defendant had the keys to the suitcase which contained the heroin. Clearly, a jury could infer from his possession of the keys that he aided and abetted the crime. Furthermore, defendant admitted the heroin was his and he would be killed if he returned to Chicago without it. It must be noted that defendant was found not guilty on count three, possession of 100 grams of heroin which was the larger sample size allegedly procured from Adigwu for Rease. Finally, as was discussed earlier, the evidence supported the conspiracy charge in count one against defendant. Accordingly, the district court properly denied defendant's motion for acquittal due to insufficient evidence.
 
 
 31
 The Order of the District Court is hereby AFFIRMED.
 
 
 
 [1]
 Defendant was indicted with a co-defendant, Vincent Emeka Adigwu, who was also charged as part of the same four counts
 
 
 [2]
 After the government rested its case, the district court granted co-defendant Adigwu's Motion for Acquittal on all counts