**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lucky A. JACKSON, a/k/a Lucky Aletor (94–3315); Richard Akhibi (94–3336), Defendants–Appellants.**

Nos. 94–3315, 94–3336.

United States Court of Appeals, Sixth Circuit.

Argued March 23, 1995.

Decided June 7, 1995.

Joseph P. Schmitz, Asst. U.S. Atty. (argued and briefed), Cleveland, OH, for U.S.

Debra M. Hughes (argued and briefed), Federal Public Defender's Office, Cleveland, OH, for Lucky Jackson.

Jacqueline A. Johnson, Fed. Public Defender (argued and briefed), Cleveland, OH, for Richard Akhibi.

Before: MILBURN and NORRIS, Circuit Judges; MILES, District Judge.*

MILES, District Judge.

Defendants Lucky A. Jackson, also known as Lucky Aletor ("Jackson") and Richard Akhibi appeal their convictions and sentences for drug charges arising out of the controlled delivery of a package containing heroin. Jackson challenges the district court's denial of his motion to suppress, as well as the denial of his request for a minor participant reduction of his guideline sentence. Akhibi challenges the sufficiency of the evidence to support his convictions. For the reasons to follow, we **AFFIRM.**

*I*

On September 27, 1993, in Lagos, Nigeria, a package was turned over to an international shipping company, DHL Airways ("DHL"), for delivery to the United States. The package bore the delivery address of Rev. Peter Akhibi, 14100 Bardwell Avenue, East Cleveland, Ohio 44112, U.S.A. The return address on the package was Mrs. Pat Akhibi, Block 2, Flat 1, Festac Town, 41 Road, Lagos, Nigeria. The package was to be delivered within four business days of its shipping date.

On September 28, 1993, a British customs official stationed at London's Gatwick Airport found the package suspicious and selected it for a manual examination. The official's suspicion was based on the package's origin (a country known as a source for illegal drugs) and on its weight, which was unusual-

---

* Honorable Wendell A. Miles, United States District Judge for the Western District of Michigan, sitting by designation.

ly heavy for the description of its contents, a photograph. The package was x-rayed, revealing something concealed inside the frame. The package was then opened, and two plastic bags containing 50 to 80 grams of a white powder were found in a hollowed-out portion of a wooden picture frame. A drug field test was positive for heroin.

The contents of the parcel were photographed, the suspected drugs were placed in a sealed bag, and these items were forwarded to the Cleveland office of the United States Drug. Enforcement Administration ("DEA"). DEA made plans for a controlled delivery of the drugs. Under the authority of a search warrant, the package was reopened. The DEA agent assigned to the case removed most of the 80.5 grams of white powder which had been originally contained in the package and substituted an equivalent amount of a sham substance, adding to the sham substance a few grams of the original heroin. The agent then reassembled the contents of the package in preparation for a delivery.

On October 1, 1993, the same day the package was being prepared for a controlled delivery, a male caller contacted DHL regarding the package. The caller complained of nondelivery and provided the DHL representative with detailed information about the package. The caller left the name of Lucky Aletor and described himself as a nephew of the addressee, the Reverend Akhibi. At trial, the evidence was undisputed that it was in fact Akhibi who made this call.

On October 4, 1993, law enforcement officers obtained a search warrant in anticipation of the controlled delivery. The warrant authorized a search of the Bardwell address not only for the package, but also for other evidence of drug activities, including other controlled substances, drug implements, drug paraphernalia, firearms, and documents related to drug activities or tending to establish the identity of the persons in control of the premises. The affidavit submitted in support of the warrant specifically stated the circumstances under which the warrant would be executed:

On October 4, 1993, a controlled delivery of the above described DHL package will be attempted at 14100 Bardwell Avenue, East Cleveland, Ohio, 44112 by Special Agents of the United States Customs Service, U.S. Drug Enforcement Administration, and local police. If the package is successfully delivered and taken inside the residence, a Federal search warrant will be executed shortly thereafter. The warrant will be executed if, and only if, the package is accepted and taken inside the subject premises.

Law enforcement personnel made the controlled delivery on October 4, 1993. Shortly before the delivery, a DHL employee acting at the behest of the DEA telephoned the Bardwell address and spoke to Akhibi, informing him that the package would be delivered that morning at 11:00 a.m.

At approximately 11:30 a.m. on October 4, 1993 special agent Nathan LaVoie of the United States Customs Service travelled to the Bardwell address, dressed in DHL delivery garb, to deliver the package. As LaVoie left his vehicle, Akhibi was standing at the front door of the residence apparently anticipating the package's arrival. When LaVoie told Akhibi he had a delivery for "Reverend Peter Akhibi," Akhibi responded that he would sign for it and that he had just called to ask about the package. LaVoie then told Akhibi to sign and print his own name on the delivery form. Akhibi did sign the form[1] but printed the name of "Peter Akhibi" instead of his own name.

Akhibi took the package inside the residence. Minutes later, a S.W.A.T. unit entered the home. Sergeant Alliston Moreland, the leader of the S.W.A.T. unit, announced the entry by shouting, "police, search warrant." Moreland then entered the residence and saw two men running at full speed pace towards the rear of the home. DEA agents positioned at the rear of the home apprehended both defendants. At the time he was apprehended, Jackson was in possession of the package and was attempting to climb a backyard fence. Akhibi was at

---

1. The signature was largely illegible.

the rear door of the home at the time he was apprehended.

Police searched the home after securing the premises, approximately 20 to 25 minutes after the S.W.A.T. unit's entry. Various items indicative of drug trafficking were seized during the search, including 27 individual packets of marijuana, a large quantity of small plastic bags, a hollowed-out library book, a DHL shipping envelope, and a pager. Personal documents and identification belonging to Akhibi and Jackson were also seized, as were documents bearing a telephone number,[2] the same Nigerian address which had appeared on the DHL package, and the name "Osato Igbanugo." Finally, also seized was a handwritten letter directed to "Osato" from "Richard" or "Ricardo," undisputedly defendant Akhibi. In the letter, Akhibi stated that "[t]his is the best I could come up with" and instructed Osato to "try and make it a hundred and forward it to the address I gave you." Akhibi also stated that "I promise you, no matter how much you borrow ... I should send enough to cover everything." Akhibi further disclosed that he had "never gone this far before" and stated that he trusted Osato to "handle it with the utmost care."

Akhibi and Jackson were charged in a four-count indictment returned on October 27, 1993. Counts One and Two of the indictment charged the defendants with attempting to possess, with intent to distribute, and with attempting to import approximately 75 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 846, 952(a), 960(a)(1), and 963, and 18 U.S.C. § 2. Count Three charged the defendants with possession with intent to distribute 2.5 grams of heroin, the amount left in the package upon delivery, in violation of 21 U.S.C. § 841(a)(1). Count Four charged the defendants with possession with intent to distribute approximately 30 grams of marijuana, in violation of 21 U.S.C. § 841(a)(1).

Jackson filed a motion to suppress the evidence seized during the October 4, 1993 search. The district court denied the motion. Later, on a motion for reconsideration filed by Jackson, the district court granted suppression of oral statements made by Jackson, but denied his request for suppression of the seized items.

Both defendants were tried before a jury. At the close of the government's case, the district court denied Jackson's motion for judgment of acquittal. However, it granted Akhibi's Fed.R.Crim.P. 29 motion in part, dismissing Count Four, the marijuana charge, as to him. The jury found both defendants guilty on all remaining counts.

Akhibi testified in his own defense at trial. A former medical student in his native Nigeria, Akhibi travelled to the United States in August, 1993 to live with his cousin, defendant Jackson, and aunt at the latter's home on Bardwell in East Cleveland. Akhibi described escalating violence and turmoil, including the military's shutdown of the universities, taking place in Nigeria before his departure. He denied knowledge of the true contents of the DHL package and gave the following explanation for his receipt of the package. In the days before he left Nigeria, he was approached by an old friend, Anthony Osato, who asked if Akhibi would perform a favor.[3] Osato's cousin had a brother who was an "activist" who had fled the military in Nigeria. The exiled brother was living in the United States. However, his pregnant wife had remained behind in Nigeria, and had given birth to a baby in her husband's absence. Osato asked Akhibi to take a picture of the baby to the exile, and Akhibi agreed to do so.

Akhibi explained that although he was shown the infant's photo when approached by Osato, he did not take it with him upon leaving Nigeria. He explained that Osato's cousin wanted to write a letter to include with the photo, and he, Akhibi, planned to retrieve both at a later time. However,

---

**2.** Subsequent investigation revealed that a series of calls were made to this telephone number, which was a Nigerian telephone number, from the Bardwell address shortly before the package was sent as well as during its transit.

**3.** Osato did not testify at trial.

events transpired, he claimed, which prevented him from obtaining the photo. Direct flights to the United States from Nigeria became unavailable. Akhibi subsequently learned that he could obtain a flight out of Nigeria, but due to short notice and his own fear he did not travel to Osato's cousin's house to retrieve the photo before his departure. Akhibi admitted making repeated calls to Nigeria and to DHL in the days before the package was delivered. However, he explained his intense interest in the package by claiming that he wanted to help Osato's family, which he felt was a victim of the Nigerian military, and that he felt guilty about not being able to keep his promise.

Akhibi testified that while in Ohio, he planned to continue his medical training and ultimately to become a plastic surgeon. He admitted being the author of the handwritten letter to Osato found during the search of his aunt's house, but he claimed that it concerned a cosmetics business and not a drug deal. Akhibi denied that LaVoie had told him to write his own name on the delivery form, and he claimed that he had left Jackson's name during a call to DHL because he had planned on going out and wanted to leave the name of someone to take the call. Akhibi further claimed that he had given the package to Jackson after the delivery because Jackson intended to put the package in the garage in order to prevent Jackson's young sister, Alice, from disturbing it. Finally, Akhibi explained that he was not attempting to flee when the police announced their presence; he claimed that he had gone to the rear of the house in response to hearing shouting, and that he went to the back door only after he looked out the window and saw his cousin lying on the ground with a gun pointed at his head.

The district court sentenced both defendants on March 17, 1994. It denied Jackson's request for a minor role reduction in his offense level pursuant to § 3B1.2 of the sentencing guidelines, and sentenced him to 41 months imprisonment. The district court sentenced Akhibi to 30 months imprisonment, granting his request for a downward departure of three levels. Both defendants filed timely appeals.

## II

### A.

■ Jackson argues that the district court erred in denying his motion to suppress the evidence seized on October 4, 1993. We review a district court's decision on a motion to suppress under two complementary standards: first, we uphold the district court's findings of fact unless they are clearly erroneous; and second, we review the district court's legal conclusions *de novo*. *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir.1993). In this case, Jackson argues that the warrant which authorized the search and seizure was defective because it did not specifically require the package to remain in the Bardwell house after the delivery. The district court disagreed, concluding that the probable cause for the search of the additional items listed in the warrant survived the package's removal from the premises. Our review of this legal conclusion is *de novo*.

The warrant issued in this case was "anticipatory," meaning that by its terms it took effect not upon issuance but at a specified future time. *United States v. Gendron*, 18 F.3d 955, 965 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 654, 130 L.Ed.2d 558 (1994). Decisions of this circuit have upheld the issuance of anticipatory warrants containing language virtually identical to that found in the warrant in this case, supported by highly similar facts indicating probable cause. *United States v. Lawson*, 999 F.2d 985, 987–88 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 574, 126 L.Ed.2d 473 (1993); *United States v. Rey*, 923 F.2d 1217, 1220–21 (6th Cir.1991). However, Jackson argues that *Rey* stands for the proposition that an anticipatory warrant is rendered invalid if the evidence is not within the premises at the time of the search.

Jackson's argument is premised on an incorrect reading of *Rey*. Both *Rey* and *Lawson* may certainly be read to require that a search pursuant to an anticipatory warrant be made only after the controlled delivery has occurred. *Rey*, 923 F.2d at 1221; *Lawson*, 999 F.2d at 987–88. Neither case, however, contains any language suggesting that

a search becomes violative of the Fourth Amendment simply because the suspects in the premises to be searched abscond with the package upon its delivery. We conclude that once the package was taken inside the Bardwell house, probable cause existed to search the premises not only for the contraband itself, but also for other evidence of drug trafficking.

Jackson also argues that the warrant created a potential for abuse and vested executing agents with unfettered discretion because it authorized them to search the premises after the package was no longer present. However, the facts supporting probable cause were not rendered stale simply because Jackson absconded with the package. The lapse of time between the delivery and the execution of the warrant was brief. In addition, the warrant required that once the controlled delivery was made, the search was to take place "shortly thereafter." Law enforcement officials thus were not vested with undue discretion in the timing of its execution. We conclude that the search warrant was not invalid simply because it failed to require the package to remain on the premises.[4]

Jackson alternatively argues that the officers who executed the warrant flagrantly violated its express terms by conducting the search after the package had left the premises. However, the warrant itself simply does not contain a requirement that the package remain on the premises. In addition, the affidavit merely required that the package be delivered and taken into the premises—not that it stay there.

Given our conclusion that the warrant and search were proper, we find no occasion to consider Jackson's argument that the search was not subject to the good faith exception of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**B.**

Jackson argues, with respect to the three heroin charges, that the district court erred in denying him a two-level reduction in his offense level as a "minor participant" in these offenses pursuant to U.S.S.G. § 3B1.2(b). Where a defendant seeks to establish facts that would lead to a sentence reduction under the guidelines, he must prove those facts by a preponderance of the evidence. *United States v. Rodriguez,* 896 F.2d 1031, 1032 (6th Cir.1990). Our review of the district court's determination of the defendant's role in the criminal activity is subject to the clearly erroneous standard. *United States v. Williams,* 940 F.2d 176, 180 (6th Cir.), *cert. denied,* 502 U.S. 1016, 112 S.Ct. 666, 116 L.Ed.2d 757 (1991).

The application notes to U.S.S.G. § 3B1.2(b) describe a "minor participant" as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." Although the district court found the question to be "close" and "difficult," it denied Jackson the minor role reduction, finding that he had failed to establish by a preponderance of the evidence that his role was minor. Jackson argues that in making this finding, the district court erred by failing to consider the testimony at trial and by relying on the fact that Jackson himself failed to present evidence at the sentencing hearing. His argument is based on a statement made by the court in passing that "the Court's never had the opportunity to hear from [Mr. Jackson.]" Jackson further argues that because the failure to consider the trial testimony in ruling on his request constitutes a misapplication of the guidelines, the sentence should be vacated and the case remanded for resentencing.

Jackson's argument that the district court failed to consider the trial testimony in

**4.** Jackson relies heavily on *United States v. Ricciardelli,* 998 F.2d 8 (1st Cir.1993), in which the court found invalid an anticipatory search warrant which failed to require a nexus between the triggering event (controlled delivery) and the place to be searched (the defendant's home). However, the court in that case found it critical that the warrant did not envision the possibility that the package would not be delivered to the defendant at his home. The language of the affidavit in support of the search warrant in this case is specific, requiring the package to be delivered to and taken inside the premises to be searched. A First Circuit decision issued subsequent to *Ricciardelli, United States v. Gendron,* has held valid an anticipatory warrant containing language similar to that contained in the affidavit in this case. 18 F.3d at 967.

reaching its determination is meritless. The district court's statement that it had "never had the opportunity to hear" from Jackson is immediately followed by its statement that it "did hear from Mr. Akhibi at great length because he testified for a lengthy period of time." This is a direct reference to the trial testimony, and it clearly shows that the district court considered the trial testimony in making its determination, notwithstanding Jackson's rather selective quoting of the transcript.

Jackson alternatively argues that if the district court did rely on the trial testimony in denying the reduction, its finding that Jackson was not a minor participant is nonetheless clearly erroneous. Jackson argues that the evidence failed to show that he had any connection to the package, and, had Akhibi known of a safe place in the house to store it, Jackson would not have been involved at all. Moreover, Jackson argues that his role must be deemed minor when compared with that of Akhibi, who made the telephone calls regarding the package and accepted the delivery.

Jackson fails to acknowledge that the evidence showed that various items were found among his possessions during the search which implicated him in drug trafficking, including a hollowed-out book, an operational pager, and 27 packets of marijuana. Moreover, evidence was found establishing Jackson's association with the Nigerian connection, namely, a mailing envelope listing him as the addressee, with a Lagos, Nigeria return address. Finally, the trial testimony further showed that Jackson fled with the package upon learning that the police were there, thus indicating his guilty knowledge of the heroin and establishing his exercise of control over the package.

Jackson is not automatically entitled to a minor participant reduction simply because Akhibi could have been deemed a more culpable participant than his cousin. Rather, Jackson's actions must be compared with those of the average participant in a similar scheme. The evidence supports the district court's determination that Jackson's role was not minor because it suggests that Jackson's role was pivotal—it suggests that he was at

the Cleveland end of a distribution chain which began in Nigeria. Even though Jackson failed to testify at sentencing, the district court was not required to credit the testimony of Akhibi that he gave the package to Jackson simply so that the latter could find a place where it would not be disturbed by Jackson's young sister. The district court's determination is not clearly erroneous.

### C.

Akhibi argues that the evidence presented at trial was insufficient to support the jury's verdict. When a defendant challenges his criminal conviction on the basis of insufficient evidence, we must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Wright,* 16 F.3d 1429, 1439 (6th Cir.) (quoting *United States v. Evans,* 883 F.2d 496, 501 (6th Cir.1989), in turn quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *cert. denied,* —— U.S. ——, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994). The government may meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt. *United States v. Peters,* 15 F.3d 540, 544 (6th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 219, 130 L.Ed.2d 146 (1994). In assessing the sufficiency of the evidence, "we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *Wright,* 16 F.3d at 1440 (citing *Evans,* 883 F.2d at 501).

The elements of a charge of possession with intent to distribute illegal drugs are (1) the defendant knowingly; (2) possessed a controlled substance; (3) with intent to distribute. *Peters,* 15 F.3d at 544. A conviction for the crime of illegal importation of a controlled substance requires proof that the defendant knowingly played a role in bringing the substance from a foreign country into the United States. *United States v. Diaz–Carreon,* 915 F.2d 951, 953 (5th Cir.1990). Akhibi argues that the government failed to establish his knowledge of the illegal contents of the package.

■ In this case, mere evidence that Akhibi accepted delivery of and assumed control over the package would not have been sufficient in itself to support a finding that he knew of the package's true contents, particularly inasmuch as the heroin was concealed within what Akhibi thought was in the package—a picture frame. In "hidden compartment" cases, courts have generally required additional evidence indicating knowledge— "circumstances evidencing a *consciousness of guilt* on the part of the defendant." *Id.* at 954 (citations omitted). However, the government did not simply show that Akhibi agreed to and did accept delivery of the package: it showed more. Akhibi's several telephone calls to Nigeria, his calls to DHL, and his general keen interest in the arrival of the package are circumstantial evidence supporting an inference that Akhibi had knowledge of the package's true contents. In addition, Akhibi's affirmative attempts to disassociate his name from the delivery of the package showed consciousness of guilt. Likewise, testimony of agent Moreland that Akhibi fled after he announced "police, search warrant"—testimony which we must assume the jury credited—supported an inference of guilty knowledge. The contents of Akhibi's unmailed letter to the elusive Osato were also circumstantially damning, despite Akhibi's attempt to explain the letter as relating to a cosmetics venture rather than a drug deal. Finally, Akhibi's implausible story regarding why he agreed to accept the package—a story which omitted certain critical details such as how he would be expected to deliver it to the exile, whose name and location he did not know—was part of the overall circumstantial evidence from which knowledge could be inferred. *Id.* at 955 ("An implausible account of exculpatory events suggests that the defendant desires to obscure his criminal responsibility"); *see also United States v. Mari,* 47 F.3d 782, 785 & n. 2 (6th Cir. 1995) (evidence of suspicious circumstances surrounding defendant's trip and defendant's giving of testimony inconsistent with that of officer on the scene supported conclusion that defendant fabricated story to cover up actual purpose of transporting drugs hidden in concealed compartment of truck); *United States v. Chu,* 988 F.2d 981, 984 (9th Cir.1993) (defendant's failure to provide name of claimed intended recipient of picture frames which concealed heroin supported inference of knowledge; however, case remanded for retrial in view of erroneous jury instruction). Given these circumstances, the evidence was constitutionally sufficient to support Akhibi's convictions.

■ In a separate but related argument, Akhibi argues that the evidence was also insufficient to establish his intent to distribute the heroin. This argument appears to be merely a continuation of his lack of knowledge argument. *See* Akhibi Brief at 27 ("You cannot sell what you do not know you have"). Intent to distribute can be inferred from the possession of a large quantity of drugs, too large for personal use alone. *United States v. Faymore,* 736 F.2d 328, 333 (6th Cir.), *cert. denied,* 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984). Moreover, a large street value of the substance possessed—in this case over $300,000—may also support an inference of intent to distribute. *United States v. Clark,* 928 F.2d 733, 737 (6th Cir.), *cert. denied,* 502 U.S. 846, 885, 112 S.Ct. 144, 240, 116 L.Ed. 2d 110, 195 (1991). Although Akhibi argues that possession of only 2.5 grams of heroin was shown, based on authorities' replacement of the majority of the original drug with a sham substance, the evidence showed that the large quantity of the drug was mailed from Nigeria and was originally present inside the picture frame, thus supporting the conviction on Counts One and Two of the indictment. In addition, intent to distribute was shown through evidence that Akhibi did actually "distribute" the heroin by giving the package to Jackson. Proof of intent to *sell* is not required.[5]

*III*

For the foregoing reasons, we **AFFIRM.**

---

5. Even assuming that we could find some merit in Akhibi's argument that the evidence did not show an intent to distribute, this argument has no bearing upon the importation conviction because intent to distribute is not an element of the offense of illegal importation.