UNITED STATES of America,
Plaintiff–Appellee,

v.

Addison James DAY, Defendant–Appellant,

Nykael Renard Willis, Defendant–Appellant.

Nos. 02–6084, 02–6150.

United States Court of Appeals,
Sixth Circuit.

Feb. 19, 2004.

Candace G. Hill, Terry M. Cushing, Amy M. Sullivan, Asst. U.S. Attorneys, Louisville, KY, for Plaintiff–Appellee.

C. William Swinford, Jr., Lexington, KY, Addison James Day, pro se, Forrest City, AR, for Defendant–Appellant.

Before MERRITT and SUTTON, Circuit Judges; and FEIKENS, District Judge.[*]

SUTTON, Circuit Judge.

In May 2002, federal prosecutors obtained convictions against Addison James Day (by jury verdict) and Nykael Renard Willis (by guilty plea) for violating 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, which together prohibit aiding and abetting others in possessing with intent to distribute more than 500 grams of cocaine. Both defendants appeal their sentences, and Day separately challenges two evidentiary rulings and two jury instructions. Concluding that no error occurred in the sentencing of the defendants or in the trial itself, we affirm.

I.

With the participation of Sammy Spiceson—a former drug dealer eager to reduce drug-trafficking charges filed against his wife—federal and local law enforcement officials in Owensboro. Kentucky arranged to purchase cocaine from Nykael Renard Willis. Spiceson agreed to meet Willis and his cohorts (one of whom was Addison James Day) on December 16, 2001, at a car dealership located in Owensboro, Kentucky.

Before Willis and Day arrived, the police established surveillance positions in the

---

[*] The Honorable John Feikens, Senior District Court Judge for the Eastern District of Michigan, sitting by designation.

car lot and obtained the services of a SWAT team. They also placed a wire microphone on Spiceson and provided him with $45,000 in cash, which he placed beneath the front seat of his SUV.

Willis and Day (and others) arrived at the car dealership in two cars. Day exited his car and went to the front seat of Spiceson's SUV to pick up the $45,000. At that point, the police moved in to make the arrests. Day and Willis fled, but the police managed to apprehend them. The police found four kilograms of cocaine in Willis's car.

After their arrests, Day and Willis gave statements to the police. Day provided two recorded statements, while Willis made one recorded statement and two unrecorded statements. Day initially denied any knowledge of the drug transaction. He expressed shock at being suspected of a crime because he had no idea Willis was making a drug sale, explained that he did not know Willis was a drug dealer, and denied touching the money in Spiceson's SUV. Willis admitted that the cocaine belonged to him, and stated that his "partner" had put the cocaine in the car. Willis provided few other details about the transaction in his recorded statement.

Day then made a second recorded statement to the police, conceding he had not been truthful during his first statement and had known that Willis was a drug dealer. He also admitted that he "believed" Willis was making a drug transaction when Willis opened the trunk of his car in Owensboro, and he changed his earlier story concerning the money, acknowledging that he had picked up the money but then put it back down.

According to FBI Agent Coffey, Willis made two later, unrecorded statements. Willis told Coffey that Day met him at the Super 8 Motel in Little Rock, loaded the cocaine in the trunk of Willis's car, and agreed to travel with Willis to sell the cocaine. But Willis later recanted this version of the events in a second, unrecorded conversation.

## II.

On the morning of trial, Willis pled guilty to the single count of the indictment under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (prohibiting aiding and abetting others in possessing cocaine with intent to distribute it). Day proceeded to trial and testified that he had no knowledge of the drug transaction. He denied both touching (much less taking) the money from Spiceson's SUV, and ever visiting the Super 8 Motel in Little Rock. In response, the Government elicited testimony from Spiceson to the effect that Day specifically asked for the money, verified that it was in the SUV, and removed it from the vehicle. A police photographer also testified that he found the money lying on the ground at the crime scene. In response to Day's denial that he had visited the Super 8 Motel in Little Rock, the Government called the motel clerk, Rebecca Adams, on rebuttal. Adams testified that she saw Willis and Day together on several occasions at the Super 8 Motel in December 2001.

Willis also testified and denied staying at the Super 8 Motel, denied having a partner in the transaction, and denied making any statements concerning Day's presence at the Super 8 Motel. In response to Willis's testimony that he did not stay at the Super 8 Motel, the Government asked him to explain a motel receipt dated December 14, 2001, which contained Willis's name and driver's license number. The Government also called FBI Agent Coffey, who testified that Willis had told him that he and Day were at the Super 8 Motel, that Day saw the cocaine, and that

Day agreed to go to Owensboro to consummate the transaction.

The jury returned a guilty verdict against Day, after which the court conducted a sentencing hearing for Day and Willis. The court calculated Day's offense level at 30 with a criminal history category of I, producing a sentencing range of 97–121 months. The district court sentenced Day to 97 months. Willis received an offense level of 29 and a criminal history category of II, producing a range of 97–121 months. Because Willis had a prior drug-trafficking conviction, the district court imposed a 120–month sentence, which is the mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(B) ("If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years. . . .").

### III.

### A.

Day and Willis both challenge the district court's enhancement of their sentences under U.S.S.G. § 3C1.1. This provision authorizes a district court to increase the defendant's offense level by two points when "(A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction; or (ii) a closely related offense." The enhancement specifically applies to "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1 cmt. n. 4.

In *United States v. Dunnigan,* 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court outlined the require- ments for imposing a § 3C1.1 perjury enhancement. It said that district courts must "review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition. . . ." *Id.* at 95. "[I]t is preferable," the Court added, "for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination . . . is sufficient, however, if . . . the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.* By making these findings, the Court concluded, trial judges will alleviate the "concern that courts will enhance sentences as a matter of course whenever the accused takes the stand and is found guilty." *Id.* at 96–97.

Consistent with *Dunnigan,* our cases ask district courts to (1) "identify those particular portions of the defendant's testimony that [they] consider[ ] to be perjurious," and (2) "either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Mise,* 240 F.3d 527, 531 (6th Cir.2001) (quoting *United States v. Sassanelli,* 118 F.3d 495, 501 (6th Cir. 1997)). In reviewing a district court's decision to impose a § 3C1.1 enhancement, we follow a three-step process:

First, we review the district court's finding of facts underlying the enhancement for clear error. Next, the district court's conclusion that a given set of facts constitutes obstruction of justice is a mixed question of law and fact which we review de novo. Finally, once the district court has determined that the defendant has obstructed justice, the application of the two level enhancement is

mandatory and we review the enhancement de novo.

*United States v. Chance*, 306 F.3d 356, 389 (6th Cir.2002) (citations omitted).

### B.

With respect to Day's sentence, the district court identified the portions of his testimony that it found perjurious, and made a finding that encompassed the factual predicates for a determination of perjury. The court identified two lies: (1) Day's denial that he was present at the Super 8 Motel, and (2) Day's denial that he grabbed the money from Spiceson's SUV. During Day's sentencing hearing, the court characterized Day's trial testimony as "absolutely incredible" and concluded:

> I do think that with respect to the two things that the government wants me to key in on ... the ever being at the Super 8 Motel and the grabbing of the money ... you committed perjury on those two things. I think that you have been with Willis before. You testified to that. I think that I'm going to give credit to the clerk who saw you at the Super 8 Motel with Willis. And I think you grabbed the money.

JA 314.

These factual findings have ample support in the record. The Super 8 Motel clerk (Rebecca Adams) testified that she saw Day and Willis together several times in December 2001. And FBI Agent Coffey testified that Willis said Day was with him at the Super 8 Motel, saw the cocaine in Willis's car, and agreed to travel to Owensboro to sell the cocaine. The Government, moreover, produced testimony from Sammy Spiceson who said he saw Day remove the money from his SUV, and Day himself admitted picking up the money and putting it back down in his recorded statement to the police on the night of the arrest.

In response, Day argues that the district court never specifically found that the lies were *material*, which is an element of a perjury claim. As we indicated in *Mise*, however, a district court may make "specific findings for each element of perjury *or* at least make a finding that encompasses all of the factual predicates for a finding of perjury." 240 F.3d at 531 (emphasis added) (internal quotations omitted). The findings that the district court did make would seem to encompass all of the predicates of a perjury determination (materiality included). But even if that were not true, this kind of alleged flaw is subject to harmless-error review. *See United States v. Patrick*, 988 F.2d 641, 647–48 (6th Cir.1993) ("[W]e agree that improprieties on the part of sentencing judges are subject to review under the harmless error rule."); *United States v. Rickett*, 89 F.3d 224, 227 (5th Cir.1996) ("[T]he district court's failure to make this specific finding [of whether the defendant obstructed justice] was harmless error, because under the facts of this case the sentence enhancement was clearly justified.").

In this instance, the district court's alleged failure to mention materiality or encompass it within other findings was assuredly harmless. Whether Day was present at the Super 8 Motel (where Willis received delivery of the cocaine) and whether he took possession of the money (as payment for the cocaine) had a direct bearing on whether Day "intended to help commit or encourage the crime." JA 60 (Jury Instruction No. 1); *see* U.S.S.G. § 3C1.1 cmt. n. 6 ("[A] '[m]aterial' ... statement ... as used in this section, means [a] ... statement ... that, if believed, would tend to influence or affect the issue under determination."). By denying his presence at the Super 8 Motel. Day attempted to contradict the Govern-

ment's claim that he had helped Willis in loading the cocaine in his car and in agreeing to join him on the trip to Owensboro. And by denying taking the money from Spiceson's SUV. Day attempted to contradict the Government's claim that he had participated directly in the sale of cocaine. If these misstatements are not material, it is hard to fathom what would be. Any error here, to the extent it existed at all, was harmless.

### C.

■ Willis's objection to the obstruction-of-justice enhancement fails for similar reasons. The district court found that Willis committed perjury by denying that he had a partner, a finding wholly supported by the record. Willis initially told the police that his partner put the cocaine in his car, and later identified Day as the one who loaded the drugs at the Super 8 Motel. And Adams testified that she saw Willis and Day together at the motel in December 2001.

Here, too, the district court did not specifically use the word materiality in discussing this false testimony. But, again, the relevance of the lie was encompassed by what the court did say: "And I think that part of your denial about the partner at trial was that you realized that if you said you had a partner, that the jury might think you were talking about [Day]." JA 328. And, again, the alleged error was harmless at any rate. By denying he had a partner in the transaction. Willis sought to undermine the Government's attempt to establish Day's knowledge of the transaction and Day's intent to aid Willis–the two key issues in determining Day's role in the drug deal. Because the materiality of Willis's misstatements is plain from the record, any error was harmless.

### IV.

### A.

■ Day also raises four issues concerning the trial—two dealing with evidentiary rulings, two dealing with jury instructions. Day initially argues that the district court improperly allowed the Government to impeach Willis with the Super 8 Motel receipt. The claim is reviewed for plain error given Day's failure to object to the use of the receipt during trial. *See United States v. Cowart,* 90 F.3d 154, 157 (6th Cir.1996).

No plain error occurred. The Government never moved to admit the receipt as evidence, but merely asked Willis to read it and answer whether it suggested he had been at the Super 8 Motel on the date in question. Nor would the Government have done this if Willis had not testified as he did. While Rule 608(b) of the Federal Rules of Evidence says that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . may not be proved by extrinsic evidence," it does not prohibit a party from asking a witness about a document that directly contradicts material testimony that the witness has given. *See Boutros v. Canton Reg'l Transit Auth.,* 997 F.2d 198. 205 (6th Cir.1993) ("Rule 608(b) is not applicable in determining the admissibility of evidence introduced to impeach the witness' testimony as to a material issue."); *United States v. Opager,* 589 F.2d 799, 802 (5th Cir.1979) ("We consider Rule 608(b) to be inapplicable in determining the admissibility of relevant evidence introduced to contradict a witness's testimony as to a material issue."). As nothing more than that happened here, we reject this claim.

### B.

■ Day next contends that the district court erred by not excluding the testimony

of Rebecca Adams (the Super 8 Motel clerk) who identified Willis and Day, and claimed to have seen them together at the motel on several occasions in December 2001. Day argues that the court violated Federal Rule of Evidence 615 (providing for the sequestration of witnesses) by allowing Adams to testify after she temporarily observed, but did not hear, Willis testifying through a courtroom window. The claim receives abuse-of-discretion review. *See United States v. Rugiero,* 20 F.3d 1387, 1393 (6th Cir.1994).

Rule 615 provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot *hear* the testimony of other witnesses." (emphasis added). Attempting to account for the "hear[ing]" nature of this prohibition. Day argues that Adams identified Willis at trial, which proves that her testimony had a visual component to it. Maybe so. But that does not prove Adams violated Rule 615 or the sequestration order—and still less does it prove that she did so with the "consent, connivance, procurement or knowledge" of the Government, which is what is required to establish a cognizable claim under Rule 615. *See United States v. Green,* 305 F.3d 422, 428 (6th Cir.2002) (internal quotations omitted); *United States v. Bostic,* 327 F.2d 983, 983–84 (6th Cir.1964) (affirming the district court's decision to admit testimony when it did "not appear that the violation of the rule was wilful or with the knowledge or consent of Government counsel"). Even if Adams did see Willis through the courtroom window before seeing him in the courtroom during her testimony, moreover, Day has given no explanation how that prejudiced her testimony or how it conceivably could have prejudiced her testimony. No abuse of discretion occurred in allowing Adams to testify.

C.

■ Day next takes the district court to task for refusing to provide a limiting instruction regarding the relevance of Adams' rebuttal testimony. In Day's view, the district court should have instructed the jury to limit its consideration of Adams' testimony to its evaluation of Willis's credibility, and should have been told not to consider the testimony as substantive evidence of Day's guilt.

The argument implicates Federal Rule of Evidence 105, which says: "When evidence which is admissible . . . for one purpose but not . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." District court decisions under the rule receive abuse-of-discretion review. *See Chance,* 306 F.3d at 387–88.

The problem with Day's argument is that Adams' testimony permissibly undermined Willis's credibility *and* permissibly served as substantive evidence of Day's guilt. Adams' ability to place Day and Willis together at the Super 8 Motel allowed the jury to conclude that Day and Willis were partners, and that Day knew about the cocaine in Willis's car. Even though the Government called Adams as a rebuttal witness, that does not prevent her testimony from serving as substantive evidence. *See United States v. Herron,* 567 F.2d 510, 515 (D.C.Cir.1977) ("[T]he testimony given by [the witness] was primarily substantive evidence, properly admissible in rebuttal as such, even though it did have some probative quality as impeachment. The evidence in question was not offered solely for its effect as impeachment and is not required to be so limited."); *see also United States v. Gray,* 24 Fed.Appx. 358, 361 (6th Cir.2001) ("Although the testimony of the rebuttal witnesses did contradict claims made by Gray during his testimony,

that evidence was not relevant only to establish that Gray was not a credible witness. Rather, the rebuttal testimony also served to contradict the defendant's claims of innocence and to establish more sinister motives...."). Because the district court properly admitted Adams' testimony as substantive evidence of Day's guilt, it did not violate Rule 105.

### D.

■ Day finally argues that the district court improperly instructed the jury when it explained the substantive elements of possession with intent to distribute cocaine along with the elements for aiding and abetting. Because the Government never produced evidence that Day physically possessed cocaine, he claims that the district court's reading of the substantive elements of possession with intent to distribute was overly suggestive of his guilt and prejudicial to his defense. "This court reviews jury instructions as a whole to determine whether they fairly and adequately inform the jury of relevant considerations and explain the applicable law to assist the jury in reaching its decision." *United States v. Prince*, 214 F.3d 740, 760–61 (6th Cir.2000). We also review the district court's instructions for an abuse of discretion and reverse only if the instructions were "confusing, misleading, or prejudicial." *Id.* at 761 (internal quotations omitted).

No such problem occurred here. In order to find Day guilty of aiding and abetting, the jury first had to conclude "that the crime of possession with intent to distribute cocaine was committed." JA 60 (Jury Instruction No. 1). By reading the substantive elements of possession with intent to distribute, the district court provided the jury with information necessary to render a complete and informed verdict. Far from being "confusing, misleading, or

prejudicial." this aspect of the instructions was helpful to the jury and arguably indispensable to its deliberations. *See United States v. Hourani*, No. 96–2049, 1999 WL 16472, at *2 (6th Cir. Jan. 8, 1999): *cf. United States v. Horton*, 847 F.2d 313, 322 (6th Cir.1988) ("Before a conviction for aiding and abetting can be upheld, it is essential that the jury find that all essential elements of the underlying crime were committed by someone."); *United States v. Bryant*, 461 F.2d 912, 920 (6th Cir.1972) ("[I]t is the duty of the trial judge to tell a jury what facts they must find before they can convict—that is, to instruct the jury as to the elements of the crime charged.") (internal quotations omitted).

### V.

■ Willis separately claims that the district court erred in refusing to depart downward based on the low purity of the cocaine. While the district court's refusal to depart downward generally may not be appealed, we will review the district court's decision if the court erroneously believed it did not have discretion to depart. *See United States v. Pruitt*, 156 F.3d 638, 650 (6th Cir.1998).

In this instance, although the district court stated that it did not believe the Guidelines authorized a departure based on low drug purity, the court also found that Willis provided insufficient evidence to support the claim. In *United States v. Solorio*, 337 F.3d 580 (6th Cir.2003). we held that "when it is clear *both* that the judge believes that she has no authority to depart *and* that she would not depart even if she had the authority." the decision is unreviewable. *Id.* at 602. Here, the court concluded its decision to deny a downward departure with these words: "[E]ven if the guidelines were such that it would allow me to [depart].... I don't have ... any credible evidence other than Willis' testi-

mony that he didn't pay a lot for it." JA 314. Because the court indicated that it would not have departed downward even if authorized. *Solorio* prevents us from reviewing the district court's decision.

## VI.

For the above reasons, we affirm the district court's judgment.