NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0136n.06

No. 10-1268

FILED

*Feb 03, 2012*

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,                     )
                                              )
        Plaintiff-Appellee,                   )       ON APPEAL FROM THE
                                              )       UNITED STATES DISTRICT
        v.                                    )       COURT FOR THE EASTERN
                                              )       DISTRICT OF MICHIGAN
VALENTINE BALOGUN, I, a.k.a.                  )
Valentine Ifeoluwa Balogun,                   )
                                              )
        Defendant-Appellant.                  )

BEFORE: CLAY, ROGERS, and DONALD, Circuit Judges.

ROGERS, Circuit Judge. A jury convicted Valentine Balogun of possession with the intent

to distribute heroin. Balogun appeals his conviction, challenging the voir dire, the admission of

certain impeachment evidence, the Government's closing argument, the district court's jury

instruction on reasonable doubt, and the overall sufficiency of the evidence supporting his

conviction. Balogun also argues that the district court erred in applying a two-level sentencing

enhancement on the grounds that Balogun committed perjury during his trial testimony. All of

Balogun's claims lack merit.

I.

On July 14, 2009, law enforcement officials at London's Heathrow Airport intercepted and

searched a suspicious Federal Express (FedEx) package en route from "Pastor Mwema Atabu" in

Nairobi, Kenya, to "Pastor Mrs. Rita Smith" at 9939 Rutland in Detroit, Michigan. R. 38 at 5-13.

Inside the package, the officials found beaded earrings, necklaces, and gospel CDs. Within the

CDs's sleeves, the officials found hundreds of grams of heroin. *Id*. at 139. According to Drug Enforcement Administration (DEA) Agent Nathan Fountain, this heroin had a street value of $100 per gram. *Id*. at 85.

DEA agents organized a controlled delivery of the package. *Id*. at 18-19. First, they removed most of the heroin, leaving behind only a small representative sample. *Id*. at 41. Second, they installed an electronic device inside the package, set to emit a signal to law enforcement when the package was opened. *Id*. at 26. Third, they obtained an anticipatory search warrant allowing them to search 9939 Rutland once the package was opened. *Id*. at 52-53.

The agents also had police officers Michael Moore and Joseph Marsh conduct surveillance of 9939 Rutland. R. 38 at 19-20. During their surveillance, Officer Moore saw a white Kia Rio parked in the driveway and Officer Marsh watched Balogun arrive at the house in a gray Dodge Caliber and enter the house using a key. *Id*. at 21-22, 146.

On July 15, 2009, Agent Mike Brouillard disguised himself as a FedEx courier and arrived at 9939 Rutland with the package. R. 44 at 16. As Agent Brouillard approached the house, Balogun opened the door. *Id*. at 17. Agent Brouillard explained that he had a package for "Mrs. Rita Smith," and asked Balogun if he would accept the package. *Id*. at 18. Balogun said that he would, signed for the package, and took it. *Id*. After Agent Brouillard left, Balogun carried the package to the Dodge Caliber, opened the driver's side door, and remained there for approximately 20 to 30 seconds, obstructed from view. R. 38 at 150. Balogun then went into the house with the package and the electronic device inside the package went off, signaling that it had been opened. *Id.* at 27, 150.

Officer Moore then instructed an arrest team to "move in." *Id*. As the team drove into the driveway and onto the lawn, Balogun exited the house carrying the package. *Id*. at 27-28. Upon seeing the officers, Balogun ran across the porch, threw the package onto the ground, and hollered, "that's not mine. I don't know what's in there." *Id.* at 28, 51. The officers arrested Balogun and executed the search warrant. *Id.* at 53.

The officers seized several pieces of evidence from the house, including: (1) mail addressed to Balogun at 9939 Rutland; (2) digital scales and small bags; (3) Balogun's application for a visa to visit Kenya; and (4) a piece of paper with a handwritten phone number for "K," containing the Kenyan country code "254." R. 38 at 54, 55, 58, 60, 82. The officers also seized Kyocera and Samsung cell phones, the latter of which was registered to Balogun at 9939 Rutland. *Id.* at 85. Records from the Kyocera cell phone showed outgoing text messages to "K" with the address at 9939 Rutland and the FedEx tracking number from the controlled delivery package. R. 44 at 33-35. Records from the Samsung cell phone showed multiple incoming calls from "K" on July 15, 2009, as well as an outgoing text message to "Coco" with the FedEx tracking number from the controlled delivery package. *Id.* at 25-31.

The officers also seized several pieces of evidence from the cars parked at 9939 Rutland. R. 38 at 61-62. In the Kia Rio, the officers found $4,280 bundled in $1,000 increments, as well as another FedEx package from "Pastor Mwema" to "Rita Smith" containing beaded necklaces and gospel CDs. *Id.* at 69-71. In the Dodge Caliber, the officers found mail addressed to Balogun at 9939 Rutland, as well as more beaded necklaces similar to the ones in the controlled delivery package. *Id.* at 79-81.

The officers gathered even more evidence through a subsequent investigation. They combed airline records and discovered that Balogun was scheduled to fly from Detroit to Kenya on April 7, 2009, and return on April 30, 2009. R. 44 at 44-46. The officers also searched FedEx records and found that from April 27, 2009, to June 18, 2009, four packages were sent from Nairobi, Kenya, to 9939 Rutland, with two of these packages either sent to or signed for by Balogun. *Id.* at 36-40.

Less than two weeks later, a federal grand jury indicted Balogun, charging him with conspiracy to possess with the intent to distribute heroin, in violation of 21 U.S.C. § 846, and possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a). R. 1. Balogun's case proceeded to trial.

Prior to trial, the district court conducted an extensive voir dire. R. 36 at 24. The district court asked the jury pool many questions, including several related to drugs, such as the following:

> Are there any of [you] who . . . have any personal experience with, or secondhand through a close friend, experience with things relating to the charges that we have here today? Drug distribution allegations, investigations, being questioned about drug distribution. Having a friend or associate or even a family member, who has been charged or accused or convicted of similar conduct, compared to what we have here?
> I'm asking the question in order to find out whether there is anything that would likely interfere with your ability to be a fair and impartial juror in this case.

*Id.* at 62. After multiple potential jurors said that they had friends or relatives with drug problems, the district court asked follow-up questions to determine whether those individuals could set aside their experiences and decide the case impartially. *Id.* at 63-71; 82-83.

Toward the end of the voir dire, Balogun requested that the district court "inquire generally if any of [the potential jurors] have any experiences through friends, relatives or themselves

involving drugs that they feel may cause them to lack objectivity to where they could be fair to the Government or the defense." *Id*. at 87. The district court, confident that it had already covered that subject, overruled Balogun's request. *Id.* at 87-88. The parties then proceeded to jury selection. Ultimately, none of the potential jurors who mentioned that they had friends or relatives with drug-related issues was empaneled. *Id.* at 101-102.

At trial, the Government put on eight witnesses and introduced dozens of pieces of evidence. R. 38; R. 44. In his defense, Balogun put on three witnesses, including himself. R. 44. Balogun's defense theory was that he had recently moved into the 9939 Rutland house, that his housemate had asked him to accept a package on her behalf, and that he did not know what was in the package, nor had he opened it. Balogun attributed the history of suspicious deliveries to another former housemate, who had recently been incarcerated on drug charges. While explaining that he recently moved into the 9939 Rutland house, Balogun testified that in May and June 2009, he lived with his girlfriend and newborn son. R. 40 at 29. However, on cross-examination, the Government used an inconsistent statement to impeach Balogun's story. Over Balogun's objection, the Government introduced evidence that, in July 2009, Balogun told a pretrial services officer that he did not know his son's name. *Id*. at 4-6, 29-31.

After all of the evidence was presented, the parties made their closing arguments. *Id.* at 97, 115. During its closing argument, the Government stated that the Samsung cell phone records, which were introduced into evidence, showed that Balogun received multiple "incoming calls from Kenya." *Id.* at 98. While Balogun did not object to this particular statement, he had previously objected to a similar statement, arguing that there was "no evidence that those calls actually came

from Kenya, only that ['254'] is a Kenya code. I know that may be technical, but I'm not an expert on phones and don't know whether just because that '254' is there, that means a call emanated from Kenya." *Id*. at 51-52. The district court, however, overruled that prior objection. R. 40 at 52. During his closing argument, Balogun noted that "the Government did not bring in anybody from the phone company to tell you that that call, because it has '254' on it, had to have been from Kenya." *Id.* at 131.

The district court then read the jury instructions. With respect to the concept of proof beyond a reasonable doubt, Balogun requested that the district court instruct the jury in accordance with Sixth Circuit Pattern Jury Instruction 1.03, ¶ 5, which states that "proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives." R. 36 at 5-6. The district court, however, explained that it disagreed with that instruction and refused to give it to the jury. *Id.* at 6-9. Instead, after instructing the jury that "[t]he Government must prove every element . . . of the crime charged beyond a reasonable doubt," the district court stated:

> A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence, or perhaps the nature of the evidence, and based upon reason and common sense. Ultimately, although it's a little bit circular, a reasonable doubt would simply be a doubt that you find to be reasonable after you have carefully and thoughtfully examined and discussed the facts and circumstances present in this case.
> Proof beyond a reasonable doubt does not mean proof that amounts to absolute certainty or beyond all possible doubt. It does not mean beyond a shadow of a doubt, which is not a phrase that we use in court. Nor does it mean that the Government must prove any fact or any crime with mathematical precision.
> Doubts that are merely imaginary or that arise from nothing more than speculative possibilities, or that are based only on sympathy or prejudice or guessing are not what we think of as reasonable doubts. In addition, the law does not require

> that every particular fact that may happen to have been mentioned in the case be proven beyond a reasonable doubt.
>
> Rather, the law requires that enough facts be proved to convince you beyond a reasonable doubt that the crime was committed in Count 1 and/or Count 2, and that the defendant is in fact guilty, and has been proven such by that standard.

R. 40 at 72-73. The district court then concluded its instructions and the jury entered deliberations.

The jury found Balogun guilty of possession with the intent to distribute 100 grams or more of heroin. R. 26. The jury, however, could not reach a unanimous decision on the conspiracy charge and the district court granted the Government's motion to dismiss that count. R. 29.

Prior to sentencing, a probation officer prepared a Presentence Report (PSR), which recommended a total offense level of 26 and a criminal history category of I, resulting in a recommended guidelines range of 63 to 78 months' imprisonment. PSR ¶ 50. At the sentencing hearing, however, the district court found that Balogun had committed perjury during his trial testimony. R. 51 at 11-21. Therefore, pursuant to U.S.S.G. § 3C1.1, the district court assessed a two-level sentencing enhancement, increasing Balogun's offense level to 28 and establishing a new guidelines range of 78 to 97 months' imprisonment. *Id.* at 26. The district court then sentenced Balogun to 80 months' imprisonment. *Id.* at 33.

Balogun filed a timely notice of appeal. R. 34.

## II.

On appeal, Balogun challenges (1) the voir dire, (2) the admission of certain impeachment evidence, (3) the Government's closing argument, (4) the district court's jury instruction on reasonable doubt, (5) the overall sufficiency of the evidence supporting his conviction, and (6) the application of the two-level sentencing enhancement. All of Balogun's claims lack merit.

A.

The district court did not abuse its discretion in conducting the voir dire. Balogun argues that the district court improperly denied him the opportunity to ask the jury pool about "general drug use problems . . . that may not have led to criminal charges." The district court, however, had "great latitude in deciding what questions should be asked on voir dire," *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991), and the court appropriately asked the potential jurors if they had any personal or secondhand experience with allegations of drug distribution or conduct similar to that alleged in this case. When four potential jurors stated that they had friends or relatives with drug problems, the district court asked several follow-up questions to determine whether those individuals could set aside their experiences and decide the case impartially. While the district court did not ask the precise question requested by Balogun, there is no evidence that its failure to do so rendered Balogun's trial fundamentally unfair. *See id.* at 425–26. Ultimately, the district court's questions sufficiently probed the issue of drugs to ensure that Balogun received a fair trial by a panel of impartial jurors. *See United States v. Middleton*, 246 F.3d 825, 834–35 (6th Cir. 2001).

B.

The district court also did not abuse its discretion in allowing the Government to impeach Balogun's credibility with a statement he made to the pretrial services officer. Balogun's suggestion that 18 U.S.C. § 3153(c) bars the Government from cross-examining a defendant concerning any statements he made to a pretrial services officer is without merit.

Balogun is correct that § 3153(c)(1) provides that "[i]nformation obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the

purposes of a bail determination and shall otherwise be confidential." But it is § 3153(c)(3) that

speaks to the admissibility of this confidential information at trial, and (c)(3) provides that such

information

> is not admissible *on the issue of guilt* in a criminal judicial proceeding unless such proceeding is a prosecution for a crime committed in the course of obtaining pretrial release or a prosecution for failure to appear for the criminal judicial proceeding with respect to which pretrial services were provided.

18 U.S.C. § 3153(c)(3) (emphasis added). Section 3153(c)(3) does not, however, restrict the

Government from using statements made to a pretrial services officer to impeach a defendant's trial

testimony. Indeed, after considering the plain language of § 3153(c)(3), several other circuits have

explicitly held that statements made to pretrial services officers are admissible for impeachment

purposes. The reasoning of *United States v. Stevens*, 935 F.2d 1380, 1395-97 (3d Cir. 1991), is

particularly compelling. *See also United States v. Griffith*, 385 F.3d 124, 126 (2d Cir. 2004); *United

States v. Wilson*, 930 F.2d 616, 619 (8th Cir. 1991); *United States v. De La Torre*, 599 F.3d 1198,

1205 (10th Cir. 2010). Thus, the district court did not err in allowing the Government to impeach

Balogun's credibility with his statement to the pretrial services officer.

## C.

Balogun's argument that his conviction should be reversed because of statements made by

the Government during its closing argument is also without merit. The statements at issue—that

Balogun received calls from Kenya, as opposed to calls from a Kenyan country code—were not

improper because these statements were reasonable inferences drawn from the evidence introduced

at trial. *See United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011). Given the extensive

evidence linking Balogun to Kenya—including but not limited to his application for a Kenyan visa, the airline records showing that Balogun was scheduled to fly to and from Kenya, and the FedEx records indicating that other packages were sent from Kenya to Balogun—it was reasonable for the Government to infer, and therefore argue, that Balogun was receiving calls from Kenya, rather than calls from someone who simply had a phone with a Kenyan country code. Since this court's precedent clearly supports a determination that the suggested inference does not amount to prosecutorial misconduct, Balogun's claim fails. *See, e.g., Cristini v. McKee*, 526 F.3d 888, 901–02 (6th Cir. 2008); *Byrd v. Collins*, 209 F.3d 486, 535–36 (6th Cir. 2000). For the same reasons, Balogun's claim that the district court erred in overruling his objection to this inference during testimony also lacks merit.

In addition, even if the Government's comments about calls from Kenya were improper, this court has held that the district court can generally correct such improprieties by instructing the jury that closing arguments are not evidence. *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001). Here, the district court clearly instructed the jury that the lawyers' arguments were not evidence. R. 40 at 74. Therefore, even if the statements had been improper, that impropriety was cured by the jury instruction.

Finally, Balogun's claim that he was "highly prejudiced" by the Government's comments is also undercut by the fact that he was able to argue, in his own closing, that "the Government did not bring in anybody from the phone company to tell you that that call, because it has '254' on it, had to have been from Kenya." Since Balogun was able to challenge specifically the Government's argument that he received calls from Kenya, his allegation of prejudice is unavailing.

D.

The district court also did not err in instructing the jury. Balogun argues that the district court improperly gave the jury a modified instruction on the concept of proof beyond a reasonable doubt instead of instructing the jury in accordance with Sixth Circuit Pattern Jury Instruction 1.03, ¶ 5, as he requested. Balogun claims that this was reversible error because (1) his proposed instruction was not substantially covered by the instruction that was ultimately given, and (2) the district court's instruction diminished the Government's burden of proof, substantially impairing his defense. Neither of these arguments has merit.

First, Balogun's proposed instruction was substantially covered by the district court's instruction. This court was confronted with a nearly identical issue last year, in an appeal from the same district court involved in this case. *See United States v. Kish*, 424 F. App'x 398 (6th Cir. 2011). In *Kish*, this court held that Sixth Circuit Pattern Jury Instruction 1.03, ¶ 5 was substantially covered by an instruction that was very similar to the one given in this case and that also compared a reasonable doubt to "a fair, honest doubt." *Id.* at 407. Indeed, Balogun's counsel told the district court, "I can't tell you that your proposed instruction is not accurate, because there's nothing in there that is inaccurate or wrong under the law."[1] Accordingly, Balogun's argument that his proposed instruction was not substantially covered by the district court's instruction is without merit.

Second, the district court's instruction did not diminish the Government's burden of proof. This court has repeatedly held that "'comparing a reasonable doubt to a 'fair, honest doubt' . . . does

---

[1] In fact, by making this statement, Balogun arguably waived his right to challenge the district court's jury instruction on appeal. *See United States v. Budd*, 496 F.3d 517, 529 (6th Cir. 2007).

not suggest to the jury a lowering of the government's burden of proof.'" *Id*. (quoting *Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999)). Moreover, the district court told the jury, in other parts of the charge, that the Government had the burden of proving each element of the crimes charged beyond a reasonable doubt and that Balogun had no obligation to present any evidence at all. These statements further prove that the district court's instructions did not lessen the Government's burden of proof or somehow shift the burden to Balogun, as he suggests. *See United States v. Hart*, 640 F.2d 856, 860 (6th Cir. 1981). Balogun's claim that the district court erred in instructing the jury is unfounded.

E.

Balogun also challenges the sufficiency of the evidence supporting the jury's finding that he possessed heroin with the intent to distribute it. While Balogun moved for a judgment of acquittal at the end of the Government's case-in-chief, he failed to renew his motion at the close of all of the evidence. Therefore, Balogun forfeited his objection to the sufficiency of the evidence, and this court's review is limited to whether there was a "manifest miscarriage of justice." *United States v. Kuehne*, 547 F.3d 667, 696-97 (6th Cir. 2008). There was not. Viewed in the light most favorable to the Government, the evidence was sufficient to establish that Balogun violated each of the elements of 21 U.S.C. § 841(a): (1) knowingly (2) possessing heroin (3) with the intent to distribute it. *See United States v. Russell*, 595 F.3d 633, 645 (6th Cir. 2010).

First, there was sufficient evidence that Balogun knew that the package contained a controlled substance. It is true that mere evidence that Balogun accepted delivery of and assumed control over the package would not have been sufficient in itself to support a finding that he knew

of the package's true contents, particularly since the heroin was concealed within the CDs's sleeves. *See United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995). This court has recognized that "[i]n 'hidden compartment' cases, courts have generally required additional evidence indicating knowledge—'circumstances evidencing a *consciousness of guilt* on the part of the defendant.'" *Id.* (internal citations omitted). Here, however, the Government introduced this additional evidence. Balogun's numerous connections to Kenya, the several incoming calls from "K," and the outgoing text message with the FedEx tracking number from the controlled delivery package all support an inference that Balogun had a keen interest in the arrival of the package and thus, knew of its true contents. *See id.* Moreover, Officer Fountain's testimony that upon seeing the officers, Balogun ran across the porch, threw the package on the ground, and hollered "that's not mine. I don't know what's in there," also supported an inference that Balogun had a guilty conscience. *See id.*

Second, there was clearly sufficient evidence that Balogun possessed the heroin. At trial, Agent Brouillard testified that Balogun agreed to accept the controlled delivery package, signed for it, and took it. Officer Marsh testified that he saw Balogun walk on the porch with the package and eventually go into the house. Officer Moore testified that after the electronic device inside the package went off, signaling that the package had been opened, he saw Balogun exit the house carrying the package. All of this evidence strongly indicated that Balogun possessed the heroin.

Third, there was sufficient evidence that Balogun intended to distribute the heroin. Since the jurors heard testimony that the controlled delivery package initially contained hundreds of grams of heroin, it was reasonable for them to infer Balogun's intent to distribute the heroin. *See United States v. Hill*, 142 F.3d 305, 311 (6th Cir. 1998). In addition, the large street value of heroin—over

$100 per gram, according to Agent Fountain—also supported an inference that Balogun intended to distribute the heroin. *See Jackson*, 55 F.3d at 1226. Finally, the presence of digital scales and small bags at 9939 Rutland, where Balogun was arrested, further supported this inference. *See Hill*, 142 F.3d at 312.

In sum, there was sufficient evidence for a reasonable jury to find that Balogun violated 21 U.S.C. § 841(a). The district court, therefore, did not err in denying Balogun's solitary mid-trial motion for a judgment of acquittal.

F.

Finally, the district court did not err in applying a two-level sentencing enhancement on the grounds that Balogun committed perjury during his trial testimony. In order to apply the enhancement, the district court was required to (1) identify perjurious statements Balogun made on the stand, (2) find that these false statements were material, and (3) find that Balogun made these statements willfully. *See United States v. May*, 568 F.3d 597, 607 (6th Cir. 2009); *United States v. Ellison*, 336 F. App'x 483, 486–87 (6th Cir. 2009). The district court followed this procedure and reasonably found that the enhancement applied.

First, the district court identified several specific perjurious statements Balogun made on the stand, including but not limited to his statements that after he accepted the controlled delivery package, he did not walk to the Dodge Caliber, did not take the package into the house, and did not open the package. R. 51 at 10-21. The district court accurately noted that Balogun's testimony was not supported by any other evidence in the case. *Id.* at 11. In fact, the testimony of multiple law enforcement officials directly contradicted each of these statements. We have previous upheld

perjury enhancements based on a "mountain" of contradictory testimony. *May*, 568 F.3d at 607. The district court also suggested that Balogun testified falsely when he said that he thought the package contained a bomb because Balogun admitted that he threw the package onto the ground. R. 51 at 15. The district court rationally explained that

> it's inconsistent with a stated belief that he was holding a bomb . . . that he would . . . throw it forcefully so that it would land with some impact on the ground or on the porch. It would seem to me . . . that a sensible person's reaction, if he truly believed that he was holding something that was an explosive, [would be] to be very delicate with it. To put it down very quietly and gently and to get away from it as soon as possible, rather than throwing it.

*Id.* at 15. In short, the district court understandably found that Balogun's testimony was "infused with falsehoods." *Id.* at 21.

Second, the district court reasonably found that Balogun's false statements were material. *Id.* at 21. As the district court recognized, the jurors could have come to a different determination with respect to Balogun's knowledge and intent had they believed these statements. Since "'material' evidence" is defined to include statements "that, if believed, would tend to influence or affect the issue under determination," the district court properly found that the materiality element was established. U.S.S.G. § 3C1.1 cmt. n. 6; *see United States v. Day*, 89 F. App'x 986, 991 (6th Cir. 2004).

Lastly, the district court reasonably found that Balogun made the statements in question with the requisite intent. R. 51 at 11. The district court described Balogun's testimony as "intentional and knowing," "a fabrication," and "designed to attempt to mislead the jury." *Id.* Since there is no

evidence to refute these findings, this court will not disturb the district court's enhancement for obstruction of justice.

III.

For the foregoing reasons, we affirm Balogun's conviction and sentence.